[Crim. No. 7503.   Second Dist., Div. Three.   June 13, 1961.]

THE PEOPLE, Respondent, v. RUDY SOLANO SOLIS, Appellant.

Leighton G. Long, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Bruce A. Thompson, District Attorney, and James C. Basile, Deputy District Attorney, for Respondent.

FORD, J.—The appellant was charged with the crime of possession of marijuana in violation of section 11530 of the Health and Safety Code. In a trial by jury, he was found guilty. He appeals from the judgment and from the order denying his motion for a new trial.

The appellant asserts that his conviction cannot stand because there were three prejudicial errors committed in the course of the trial. He contends: 1. A probation officer should not have been permitted to relate a conversation he had with the appellant. 2. Evidence of other acts of the appellant

should not have been admitted under the guise of showing knowledge on his part of the nature of marijuana, since lack of such knowledge was not claimed by him. 3. The People had no right to call the appellant's wife as a witness and thereby force him to assert a claim of privilege before the jury, when the district attorney knew in advance that such claim of privilege would be made.

With respect to the second and third contentions, it is to be noted that before a jury was impanelled, counsel for the appellant stated in chambers in the presence of the deputy district attorney as follows: "MR. LONG [court-appointed counsel for the defendant] : I would like the record to show at the very beginning that the defendant will object to the calling of the wife as a witness, that we don't want the wife called, and that we don't want any comment on the wife's failure to testify in the matter. I would also like to state at the very beginning that knowledge of the character of marijuana is not being contended as defense in this particular action, that we will not raise the issue of knowledge of the character of marijuana. That is all I would like the record to show. THE COURT: All right."

A summary of pertinent evidence and proceedings at the trial is as follows: Captain Edward C. Patton of the Police Department of the City of Oxnard testified as an expert witness as to the practices of users and sellers of marijuana in the county of Ventura and as to the vocabulary of such persons. He said that certain objects shown to him (being part of Exhibit 1 for identification) appeared to be of the type of marijuana used and sold in that county.

Joseph A. Bucci, Assistant Probation Officer of Ventura County, was asked if, in an interview he had with the appellant on August 3, 1960,[1] the appellant made any statements regarding his knowledge of marijuana prior to February 21, 1960 (the date of the offense as alleged in the information being February 22, 1960). The objection of appellant's counsel, based on the statement made in chambers as heretofore noted, was ruled upon as follows: "THE COURT: Well, go ahead." Thereafter, the following occurred: "A. In the course

---

[1] In a previous trial, the appellant had been found guilty. The interview to which the assistant probation officer testified was conducted for the purpose of making a probation report in connection with that conviction. However, the trial court granted the appellant's motion for a new trial on August 24, 1960, because of error in the admission of evidence. The present judgment resulted from the retrial.

of my interview it was my duty to ask the defendant for a statement to be included in the probation report to the Court. In other words, it is the defendant's version of what his idea of the circumstances of the crime were. Initially the defendant disclaimed any knowledge of marijuana or of any use or of any possession. Upon repeated questioning, he corrected this, which occurred because we had made a preliminary investigation, prior to the interview, and we had ascertained—— Mr. Long: I have to object at this point, your Honor. This is completely irrelevant as to possession as of this case. I think counsel in his questioning and his opening statement said it makes no difference what prior to this [*sic*]. The charge here is possession. Any of these statements concerning times prior to this time would be completely improper. Mr. Basile [deputy district attorney] : If it please the Court, if Mr. Long can make a speech about the law in front of the jury, I would like to make a speech about the law and why this evidence is proper in this court and any court of law. It is not proper for attorneys to argue the law in the presence of the jury. If the Court wants me to argue it, I will argue it; but it is not proper before the jury. If there is an issue of law Mr. Long wants to raise, instead of making a speech to the jury I think he should address the Court. The Court: That is probably correct. Your objection comes a little late. He has already made his statement. When he first started to make it was the time for you to object. In any event, any objection he has now made is overruled. Q. By Mr. Basile: Merely state what the defendant told you, Mr. Bucci. A. As I said, initially he denied any knowledge of the marijuana on the night in question that he was arrested. In respect to the use he said that—he initially denied ever having used marijuana; but upon insistent questioning he finally admitted that he had used it for approximately one year, that he had used it for approximately a dozen times, and that although he used it he got no kick out of it, so to speak, that he merely did it to be socially acceptable to his circle of friends, who were users and who expected him to use it when he was with them.''

On redirect examination, the witness further testified in part as follows: ''Q. By 'insistent questioning,' what do you mean? What was the character of your questioning? A. Well, after the defendant had disclaimed any knowledge of the substance alleged to have been marijuana and so forth that he was charged with possessing, he went into a discussion of the—I

asked him if he had ever used marijuana; and at that point he said, 'No, I have never used it.' As I said, I had confidence that he had been; so I kept asking him if he would tell the truth if he wanted to have any application for probation turned over to the Court, because without arriving at the truth we can't prepare a good report to the Court. That is the purpose of it. We try to get the truth as closely as possible.''

Mr. Bucci stated that the appellant's statements were made freely and voluntarily.

The incident with respect to the calling of the appellant's wife as a witness for the prosecution was as follows: ''MR. BASILE: Mrs. Estella Solis. MR. LONG: Is this the defendant's wife? THE COURT: I don't know who she is. MR. LONG: I believe we discussed this in chambers. THE COURT: That is all right. That doesn't—that matter is of record. MR. LONG: I at this time object to the calling of Mrs. Solis as a witness. MR. BASILE: I will call my next witness, then. THE COURT: Yes. The objection is sustained. Call your next witness.''

Before another witness was sworn, counsel for the appellant made a motion for a mistrial which was based upon the admission of the testimony of the assistant probation officer over the appellant's objection and the conduct of the district attorney in the calling of the appellant's wife to the witness stand. The motion was denied.

Thereupon the prosecution called Howard E. Hobson as a witness. He testified that he was a police officer for the city of Santa Paula. About midnight of February 21, 1960, he and Officer Bailey were proceeding in a police car in a northerly direction on Oak Street. They were looking for a woman who had been reported to be screaming. The witness observed an unlighted vehicle in an alley. That vehicle appeared to be in the center of the alley. A person was behind the steering wheel. The door on the driver's side opened. As to the occurrence in the alley, the officer testified in part as follows: ''A. Well, I approached the vehicle, and we observed the subject moving. We stopped the police vehicle, observed the subject putting out his left leg out of the door, putting his right arm[2] in motion over the sill of the door in an arc motion, threw his arm down under—towards under the vehicle, and at that time observed a white package bouncing on the road.

[2]On redirect examination, the witness said that ''it was definitely the left arm'' which was put in motion, not the right arm.

Q. Now the package you observed bouncing on the road, in what direction did it go? A. Under the vehicle to the east from the driver's door. Q. Approximately where was your vehicle when you observed the door opening? A. Approximately 30 or 40 feet. Q. What did you do after you observed this event? A. We immediately stopped the police vehicle. Q. Did you get out of the car? A. Yes, sir. Q. What did you do? A. We—after observing the package under the vehicle, I nudged Officer Bailey to keep an eye and he knew what I was talking about at the time, which I also kept an eye on him as I approached the vehicle. I got out of the vehicle, walked in front of the police unit, looked under the vehicle, and walked over to Mr. Solis. Q. When you walked up to this car, was the person that you had seen behind the wheel out of the car? A. Yes. He was out at the time when we arrived at the vehicle. Q. Is that person in the courtroom now? A. Yes. Q. Will you identify him for the jurors? A. The fellow sitting to your left; Mr. Solis, right there. . . . A. When I came up to the vehicle, Mr. Solis stated to me, 'I know what you want.' Q. What did you say? A. And directly after that I asked him where was the woman. And he pointed over there towards New Street across the lot. He stated, 'She's over there at her mother's.' '' When the witness asked the appellant what the object under the vehicle was, he replied, ''I have nothing to do with that kind of stuff.'' The witness retrieved the package from its position which was approximately 18 inches under the vehicle. The officer further testified: ''A. I picked the package up, walking towards Mr. Solis. He stated to me at the time that he has nothing to do with that kind of stuff and that if he was booked on it it would make it rough for me; and he kept calling me 'Hob' for 'Hobson,' for short. He says, 'You could let me go if you wanted to.' I said, 'Let's check for sure and see what we have here.' Q. What did you do then after you made these statements you testified to? A. He—before—he openly stated, 'It is just my luck to run over something like that.' I then proceeded to open the package in front of Mr. Solis and Officer Bailey. In doing so I observed three cigarettes which were not burnt, the fourth one which was burnt a third of the way down.'' The cigarettes so found were the objects which were marked as People's Exhibit 1 for identification. In opening the cigarettes, the officer found a seed and other particles typical of marijuana. The appellant was informed that he was under arrest for possession of narcotics. At the police station the witness

asked the appellant if he knew what the objects in the package were, and he replied, "I have nothing to do with that stuff." The officer then opened the package and laid it in front of the appellant. The officer said, "You know just as well as I do what these are." The appellant said, "Yes, marijuana cigarettes."

Wayne A. Bailey, a reserve police officer for the city of Santa Paula, testified substantially the same as Officer Hobson had testified with respect to the occurrence in the alley. However, he did not see the appellant's arm in motion because another police car was approaching at the time and its lights were shining in his eyes. But he saw "the package rolling under the car."

Douglas Victor Sorenson, a police officer for the city of Santa Paula, also testified as to incidents on the night of the appellant's arrest. Elliott B. Hensel, a forensic chemist for the Sheriff of Ventura County, testified that he examined the cigarettes and determined that they contained marijuana.

The appellant testified in his own behalf. He related what he and his wife did during the day and evening of February 21, 1960. After a disagreement with his wife, he parked in the alley. He could see his mother-in-law's house, where his wife was, from that point. He wanted to see if his wife would return to a bar where they had been earlier. Before the time Officer Hobson picked up the package from under the car, he had never seen the cigarettes. On cross-examination, he testified in part as follows: "Q. When you saw marijuana cigarettes before, did anybody ever use the word 'stuff' to describe them? A. Never seen it before. Q. This was the first time in your life you ever saw marijuana? A. Seen marijuana cigarettes when Hobson showed it to me. Q. You had never seen marijuana cigarettes before in your life? A. I haven't. Q. Didn't you tell Mr. Bucci, of the Probation Department, that — August 3d of this year — you had smoked marijuana cigarettes before? A. That is what he wanted to hear, and I wasn't under oath. Q. Oh, I see. That's what he wanted to hear; so you told him this story? A. That's right. Q. What else did you tell him that was untrue? A. That's it. Q. Just that? A. Just that. Q. How about associating with people that smoked marijuana? Was that false? A. That's right. Q. Did you ever associate with anybody that smoked marijuana? A. Not to my knowledge." As to his object in not being truthful with the probation officer, the witness said: "Well, he was asking me all kinds of questions and I figured

that if I could tell him that maybe I could still get my probation, see, because that's what he was trying to push: that business about the trial, I was found guilty, and all that. . . . A. (Continuing)—if I told him that—that's what he wanted to hear—maybe he would recommend my probation. Q. Would you like to get probation? A. Sure, I would. I didn't want to get locked up. Nobody would in his right mind.''

The appellant's first two contentions may be considered together. There is no merit in the assertion that the appellant could claim a privilege with respect to communications made by him to the probation officer. No statute so provides. Consequently, such evidence was admissible if it was relevant to any issue before the court. (*Cf. People* v. *Curry,* 97 Cal.App.2d 537, 547-550 [218 P.2d 153].)      ''In a prosecution for unlawful possession of narcotics, the People must prove that the forbidden substance was under the dominion and control of the accused, that the accused was aware of its presence, and that he knew the substance was a narcotic.'' (*People* v. *Tabizon,* 166 Cal.App.2d 271, 273 [332 P.2d 697]; see also *People* v. *Winston,* 46 Cal.2d 151, 158 [293 P.2d 40].) It was to the element of knowledge of the narcotic character of the objects he was alleged to have possessed that the evidence of his admissions to the probation officer was addressed.
As this court said in *People* v. *Castellanos,* 157 Cal.App.2d 36, at page 39 [320 P.2d 152]: ''Evidence of other acts of a similar nature and of other crimes is admissible in evidence when not too remote, to show defendant's knowledge of the narcotic nature of the object possessed. . . .      Any evidence which is necessary, pertinent, and material to proof of the crime charged, or which logically and by reasonable inference tends to establish any fact material to the prosecution, is not inadmissible merely because it may prejudice the accused by proof of his guilt of other crimes.'' (See also *People* v. *Sykes,* 44 Cal.2d 166, 171 [280 P.2d 769]; *People* v. *Cervantes,* 177 Cal.App.2d 187, 190 [2 Cal.Rptr. 107]; *People* v. *Jackson,* 164 Cal.App.2d 772, 777-779 [331 P.2d 63]; *People* v. *Sanders,* 163 Cal.App.2d 132, 134 [328 P.2d 825]; *People* v. *Freytas,* 157 Cal.App.2d 706, 719 [321 P.2d 782]; *People* v. *Ballard,* 145 Cal.App.2d 94, 98 [302 P.2d 89]; *People* v. *Torres,* 140 Cal.App.2d 751, 755 [295 P.2d 904].)

The appellant argues that the law as heretofore stated is not applicable because before the jury was impanelled he made it clear that ''knowledge of the character of marijuana is not being contended as a defense . . . [and] we will not raise

the issue of knowledge of the character of marijuana.'' Of a similar contention where at the trial, after objections to evidence of prior use and of puncture marks had been overruled, the defendants stated that their defense was not possession without knowledge but a denial of possession at all, the appellate court said in *People* v. *Hancock,* 156 Cal.App.2d 305, at page 312 [319 P.2d 731] : ''The prosecution must prove knowledge and the mere fact that defense counsel makes a statement as to their defense does not prevent the introduction of such evidence.'' However, it has been indicated that situations may exist in which such evidence should not be received. In *People* v. *Spencer,* 140 Cal.App.2d 97 [294 P.2d 997], the question was presented of the propriety of inquiring of the defendant upon cross-examination as to a prior conviction of a narcotic offense in the nature of a misdemeanor *after* the defendant had testified in substance that he knew what heroin was. In reversing the judgment, the court said at page 105 : ''The rule is one of necessity and the risk of misuse should not be incurred if the evidence is not directed to a disputed issue in the case. Here the record was clear, before the question of appellant's prior conviction of the misdemeanor conviction of possession of heroin was first asked by the prosecutor, from appellant's own testimony above quoted that appellant knew what heroin was. His defense, already developed, was not that he did not know what heroin was but that he was not guilty of the possession and sale of the particular heroin as charged in the information. Since it was already clear that knowledge of the narcotic character of heroin was not in issue there was no reason, and no justification, for the admission of this evidence with the attendant danger of its misuse by the jury despite the cautionary instruction of the court.'' But the reasoning of the Spencer case can hardly be applied to the case now before us because, as noted hereinabove, in the course of the cross-examination of the appellant he testified in substance that he was unfamiliar with marijuana cigarettes. The appellant's further argument that an effect of the testimony of the probation officer was to disclose to the jury that he had been convicted of the charged offense in a prior trial appears to have some basis, but that testimony cannot be said to have been improperly received if such evidence was otherwise admissible. Under such circumstances, there is no violation of the provisions of section 1180 of the Penal Code.[3] (*Cf. People*

[3]Section 1180 of the Penal Code is as follows: ''The granting of a new trial places the parties in the same position as if no trial had been

v. *Castellanos, supra,* 157 Cal.App.2d 36, 39.) While the use of the probation officer as a witness under the circumstances was extraordinary[4] and involved a practice not to be encouraged, it cannot be said that it constituted prejudicial error.

The problem remaining is whether it was prejudicially erroneous for the People to call the appellant's wife to the witness stand in the face of the prior warning that there would be an objection to such procedure. Although it has been said that if the prosecution desires to have the wife of the defendant testify as a witness, "the proper procedure is to offer the spouse as a witness, subject to the claim of privilege by the defendant" (*People* v. *Klor,* 32 Cal.2d 658, at p. 663 [197 P.2d 705] ; see also *People* v. *Bigelow,* 165 Cal.App.2d 407, 416 [332 P.2d 162] ; *People* v. *Chand,* 116 Cal.App.2d 242, 251 [253 P.2d 499] ; *People* v. *Carmelo,* 94 Cal.App.2d 301, 305-306 [210 P.2d 538] ; *People* v. *Moore,* 111 Cal.App. 632, 634 [295 P. 1039]), in the case now before this court the People knew in advance that such procedure would serve no purpose except unfairly to prejudice the appellant. Justice does not consist of the mechanical application of rules of procedure without regard to the circumstances of the particular case. A situation of a similar nature was presented in *People* v. *Gill,* 143 Cal.App.2d 46 [299 P.2d 682], wherein this court said, at page 52: "It is obvious that the deputy knew, when he called defendant's wife as a witness, that she would not be permitted to testify; and it is obvious that he intended thereby to unfairly create an unfavorable impression against defendant. When this conduct of the deputy is considered in connection with his conduct in asking defendant the irrelevant questions about Miss Hillary, it seems apparent that the deputy intended that a substantial part of the trial should be by unfair innuendoes." In the present case, the conduct of the deputy district attorney cannot be justified by any argument to the effect that the People had to call Mrs. Solis to determine whether she was in fact the wife of the appellant or whether the privilege would be claimed by the appellant; the record

had. All the testimony must be produced anew, and the former verdict or finding cannot be used or referred to, either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the accusatory pleading.''

[4]It is clear that such testimony was unnecessary to the People's case. There was evidence bearing upon the appellant's knowledge of the narcotic nature of the objects in the package aside from the testimony of the

clearly shows that the People assumed her to be married to the appellant when she was called as a witness.[5]

The difficult question is whether the conduct of the deputy district attorney in calling Mrs. Solis to the witness stand constituted reversible error. Such determination must be made in the light of the entire record, including the fact that the court instructed the jury as follows: "It is the law of this State that a wife may not testify in a case where her husband is the defendant if he objects to her testifying. When he does object, the jury must not draw any inference from that fact as to the guilt or innocence of the defendant or speculate as to what her testimony would have been had she testified." It is obvious that the tactics employed by the prosecuting attorney in calling Mrs. Solis to the witness stand were inherently unfair under the circumstances. As the trial judge observed in the course of the argument of the motion for a new trial: "Undoubtedly, they [the jurors] jumped to the same conclusion that I did, and that was that if this witness had been allowed to testify, she would testify against her husband. I immediately arrived at that conclusion. I think everybody in the courtroom did the same thing."

The conclusion that the appellant did not receive a fair trial is inescapable. Due process cannot be regarded merely as an abstract principle; it must be honored in practice if it is to be meaningful. ▪ As said in *People* v. *Lapin*, 138 Cal.App. 2d 251, at page 264 [291 P.2d 575]: "It is the bounden duty of courts to insist that a defendant be fairly convicted, because if he is not so convicted he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent. ▪ The fact that the evidence may point rather conclusively to defendant's guilt does not take from the latter his right to such a fair and impartial trial." (See also *People* v. *Barquera*, 154 Cal.App.2d

probation officer. As stated in *People* v. *Tennyson*, 127 Cal.App.2d 243, at page 246 [273 P.2d 593]: "Insofar as knowledge of the illegal nature of the contraband is concerned, that required element was sufficiently shown by the conduct and behavior of the appellant in attempting to secrete the narcotics. [Citations.]"

[5]During the course of the trial the deputy district attorney (in the absence of the jury) stated to the court: "I am putting on the record that I had subpoenaed this woman, who represented to me that she is the wife of the defendant, . . . and that she was willing to testify as to certain questions the answers to which I believe are relevant and material to the issue in this case, the issue as to whether or not the defendant is guilty or innocent of the crime charged."

513, 519 [316 P.2d 641] ; *People* v. *Smittcamp*, 70 Cal.App.2d 741, 754 [161 P.2d 983].)

For the reasons herein stated, the judgment and the order denying the appellant's motion for a new trial are reversed and the cause remanded for a new trial.

Shinn, P. J., concurred.

Vallée, J., concurred in the judgment.

Respondent's petition for a hearing by the Supreme Court was denied August 9, 1961.