[Crim. No. 8905. Second Dist., Div. Four. Oct. 14, 1963.]

THE PEOPLE, Plaintiff and Respondents, v. JOE KESSLER, Defendant and Appellant.

Zeman & Fischer and B. D. Fischer for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and H. Warren Siegel, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, P. J.— After trial by jury, defendant was found guilty of rape as to one victim and not guilty of

assault with intent to commit rape as to another person. Thereafter, the court granted defendant a new trial on the rape charge. At the second trial before a jury defendant was again convicted. A motion for new trial was denied and probation granted conditioned on imprisonment for the first six months in the county jail. Defendant appeals from such judgment.

■ The evidence for the prosecution was as follows: On April 3, 1962, while her husband was at work, the prosecutrix was washing her baby's diapers on the service porch. She testified someone seized her from behind, held her arms and placed one hand over her mouth. During the struggle she noted it was defendant who had been a family friend. He forced her into the adjoining bedroom and disrobed her. She attempted to get free and to scratch him but could not. He pushed her on the bed and forcibly committed an act of sexual intercourse. A neighbor testified the prosecutrix came to her house, visibly upset and with a bleeding lip, and related the incident. The neighbor suggested calling the police which was done.

Defendant, who is an instructor in auto mechanics, testified that he had been asked to come to prosecutrix' home to assist in starting her car. He denied having had intercourse, contending that he was invited into the victim's bedroom and that they merely caressed and kissed each other.

The record discloses substantial evidence to support the verdict of the jury and as to that point our inquiry rests here. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

Defendant complains of several specifications of misconduct on the part of the prosecutor which he contends constituted prejudicial error. With but one exception, these concerned matters of minor importance which would not warrant a reversal under the application of section 4½ of article VI of the Constitution and do not merit discussion. However, as to one specification, prejudice to defendant undoubtedly resulted and necessitates reversal.

■ During the *voir dire* examination the prosecutor stated:

"There is one other possible witness who is not in court. I can only mention his name and ask if any of you are acquainted with him in any way. Are any of you acquainted in any way with a Jack White, of the Probation Department of Los Angeles County? Is the name familiar to any of you?

"Now, this case involves, as has been discussed, charges of a sexual nature. Do any of you feel that because of that fact you would rather not sit on a jury?"

The probation officer was not called by the prosecutor during its case in chief, but only belatedly near the end of the trial, on rebuttal. His testimony in no way tended to prove the commission of the crime but related only to the reason defendant had given for his visit to the home of the prosecutrix the day of the offense. As we have said, at his trial, defendant had stated he had been asked to come to the victim's home to see if he could get her car started. The probation officer testified that defendant had told him in July that the reason for such visit was that the prosecutrix and her husband were interested in buying another automobile. Both reasons could have been valid; the one does not preclude the other. Since the prosecutor stated, when objection was made during the examination of the probation officer, that the testimony was *not* offered for impeachment purposes, there does not appear to have been any proper purpose related to any disputed issue justifying the introduction of such testimony.

A portion of the direct examination of the probation officer by the prosecutor is as follows:

"Q. What is your business or occupation, sir?

"A. I am a Deputy Probation Officer with the Los Angeles County Probation Department.

"Q. Mr. White, calling your attention to the date of July 20th of this year, on that date did you have occasion to have a conversation with this defendant here, Mr. Kessler, concerning at least partially the charges that are presently pending here?

"A. I had several conversations with Mr. Kessler. I cannot say the particular date unless I would see my report.

"Mr. Light: I believe you have seen this, counsel.

"Q. By Mr. Light: I show you—does this appear to be a copy of your report?

"A. It is.

"Q. And does this make reference to a conversation with the defendant on the date of July 20?

"A. No. This is the date that this report was due in court. This would mean that I had to talk with this man at least five days prior to that date.

"Q. Sometime in that period of time then, shortly before July 20th, did you speak with him?

"A. Yes, I did.

"Q. And did portions of that conversation concern the charges that are presently pending here?

"A. They did.

"Q. In other words, this alleged rape on a Harriett Cole?

"A. That's correct.

"Q. About how long did you talk with the defendant concerning these charges, that is the one involving Harriett Cole?

"A. Well, indirectly I talked with Mr. Kessler approximately five times. To the best of my knowledge I talked with him in person on two occasions; roughly three hours, approximately one hour on the initial interview and in his home approximately two hours.

"Q. Now, during the course of that conversation, with reference to his own evaluation of himself, did Mr. Kessler make the statement that in his opinion he may need some help, referring to psychiatric help?

"MR. ZEMAN: Now, at this time I am going to make certain objections, your Honor, and I would like to make them in the absence of the jury."

Objections and a motion for mistrial were thereupon made and denied by the court. This was error. Not only did the questions infer that defendant had been found guilty of the particular charges but there was a direct implication that defendant had been involved in other charges.

Defendant's counsel cross-examined the probation officer, no doubt in an attempt to counteract the unfavorable effect of the probation officer's very presence on the stand, but with disastrous results to his cause. Likewise, answers volunteered by the probation officer, which were not responsive to the questions asked, were very prejudicial:

"Q. By MR. ZEMAN: Did you ask the defendant at any time if he was guilty; do you recall?

"A. No, I do not recall. This would not be a normal practice. It is not a probation officer's responsibility to determine one's guilt. We assume they are guilty when they come to us. I may have discussed the essence of this, but I would not say 'Are you guilty?'

"Q. You assume it?

"A. This is my responsibility to assume it unless it is a pre-trial report that I am doing. Then the man has not been found guilty.

"Q. As far as your office is concerned, at this time he

stands innocent of any conviction; at this time as far as your office is concerned?

"A. I am not at liberty to speak for the office of the Probation Department. For the report I submitted to the court, the man was guilty, and I had a job to do, and that was to submit a report for the court. I don't know the status of this defendant at this time. On July 20, 1962 when I submitted that report he was.

"MR. ZEMAN: I think at this time I should renew my motions that I previously made at the bench.

"THE COURT: You are the one that is asking the questions.

"MR. ZEMAN: I didn't ask him that question.

"THE COURT: You sure did.

"MR. ZEMAN: I asked him as far as the status of the probation at this particular time.

"THE COURT: Motion denied."

Defendant contends that such conduct of the prosecution was prejudicial in that it constituted a calculated method of unfairly alluding to a former trial in which the defendant was involved and in which the jury could infer defendant was found guilty.

In *People* v. *Solis,* 193 Cal.App.2d 68, 77 [13 Cal.Rptr. 813], the court stated: "While the use of the probation officer as a witness under the circumstances was extraordinary and involved a practice not to be encouraged, it cannot be said that it constituted prejudicial error." In the *Solis* case an effect of the testimony of a probation officer was to disclose to the jury that the defendant had been convicted of the charged offense in a prior trial, but the court held that it was properly received because otherwise admissible in that it tended to prove knowledge of the character of marijuana, an essential element in the proof of guilt. The defendant had testified in substance that he was unfamiliar with marijuana cigarettes. "Any evidence which is necessary, pertinent, and material to proof of the crime charged, or which logically and by reasonable inference tends to establish any fact material to the prosecution, is not inadmissible merely because it may prejudice the accused by proof of his guilt of other crimes." (*People* v. *Castellanos,* 157 Cal.App.2d 36, 39 [320 P.2d 152].)

Here, however, the respondent admits, commendably, that the testimony of the probation officer was unnecessary, stating in its brief, "In the *Solis* case, as here, the probation

officer's testimony was not essential to the People's case." The use of a witness, such as a probation officer, with all of the dangers involved by virtue of his previous contacts with defendant in his official capacity, was accordingly unjustified as the jury could have misused such evidence without good cause to defendant's disadvantage. "The rule is one of necessity and the risk of misuse should not be incurred if the evidence is not directed to a disputed issue in the case." (*People* v. *Spencer*, 140 Cal.App.2d 97, 105 [294 P.2d 997].)

Section 1180 of the Penal Code provides: "The granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict or finding cannot be used or referred to, either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the accusatory pleading." Such mandate applies here. The unnecessary calling and identifying of the probation officer as a witness was an indirect method of using and referring to defendant's former trial; implying prior criminality, it could not have failed to prejudice defendant in the eyes of the jury. Unquestionably, it denied him a fair trial.

The judgment is reversed.

Jefferson, J., and Kingsley, J., concurred.