[Crim. No. 5550.   Second Dist., Div. Three.   July 10, 1956.]

THE PEOPLE, Respondent, v. RICHARD GILL, JR., Appellant.

Gladys Towles Root for Appellant.

Edmund G. Brown, Attorney General, and Patrick T. McCormick, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was charged in Count I with assault with intent to commit rape, and in Count II with rape by use of force and violence. In a trial by jury he was convicted on both counts. He was sentenced to state prison and it was ordered that the sentences run consecutively. He appeals from the judgment and sentence.

Appellant contends that the evidence was insufficient to support the verdict (as to Count I); the court erred in receiving evidence as to prior misconduct of appellant; and the deputy district attorney was guilty of misconduct.

With reference to Count I, Mrs. Williams testified that on November 7, 1954, about midnight, she was driving her automobile on San Pedro Street and when she was near Vernon Avenue the automobile stalled; defendant walked up the street and asked her if she would like for him to help her; she replied in the affirmative, and he pushed the car to the middle of the street; with her permission he got in the driver's seat and waited for another car to come along and give her car a push; after being pushed twice by other cars her car started and defendant drove "around in circles"; after asking him where he lived, she told him that since the car was running nicely he could drive by his house and get out and then she would go home; he drove to 42d Street and stopped by the curb near the middle of the block; then he tried to kiss her; she asked him what he meant by trying to get so personal with her and she told him that if payment was what he wanted she was prepared to pay him; he replied that he hoped she did not think that he went to all that trouble for nothing; he pushed her down on the seat (front seat) with her head toward the right door and her feet on the seat of the car and toward the left door; he pulled her skirt up above her waistline; he pinned her shoulders down; he was on top of her; her feet pushed the door open, and

she screamed; he told her that he had a knife and if she screamed again he would kill her; he grabbed the door, and told her that, "If I have to go to all this trouble, it isn't worth it"; she pleaded with him all the time to let her go; he started the car, drove about two blocks and then she jumped out of the car, screamed and ran to a house across the street and reported the happening to the police; when she jumped out of the car she broke her toe and lost her shoes; the police came that same night and she went with them to San Pedro Street, where they found her car; she did not consent to sexual intercourse with defendant; she was not married to him.

With reference to Count II, Miss Harris, 22 years of age, testified that on Friday night, May 15, 1955, about midnight, she was alone at 112th Street and Wilmington Boulevard trying to fix a flat tire on her car; she had parked the car there two days previously because a tire was flat; defendant "pulled up behind" her car, and asked if she needed help; she replied that he could loan a jack to her; he said that he did not have a jack, but he could get one from his friend at 41st Street and McKinley Avenue and if she would go with him he would be back in a few minutes; he put her spare tire in his car and said he was going to get it balanced; she got in his car and went with him; he drove into a dark alley near 41st Street and McKinley Avenue, parked his car, pulled her in his arms and tried to kiss her; she told him "No," and to go and get the jack; he said that he was not going to that trouble for nothing and that she was to have intercourse with him; she kept telling him "No"; he tried to pull up her dress; he took her coat off of her; he pushed her down on the front seat with her head under the steering wheel; he was choking her; she was afraid because she thought he might kill her; he was on top of her and he had sexual intercourse with her without her consent; after the intercourse defendant got out of the car; then she saw a man coming from behind the car to the driver's side of the car; she jumped out of the car and ran out of the alley; after she was out of the alley she started screaming and ran to a house where a lady called the police; she (witness) left her coat and purse in defendant's car; she was not married to defendant.

Officer Banks testified that on May 16, 1955, he asked defendant if he had been in the vicinity of 114th and Wilmington on the night of the 13th and the morning of the 14th;

and that defendant replied that he had not; that he (officer) asked him if he had picked up a woman in that vicinity; and that defendant replied, "No"; that defendant also said, in reply to questions, that he did not have a spare tire or a woman's belongings in his car. The officer also testified that, in a conversation with defendant on May 23, 1955, defendant said: he tried to kiss Mrs. Williams and she pulled away from him and got out of the car; then she got back in the car and he started to take her home, and she jumped out again and ran up the street; he drove about five blocks and abandoned the car. The officer also testified that, in the same conversation, he asked defendant what happened on May 13 at 114th and Wilmington; and defendant said (in part): he was driving along and he saw this woman, Miss Harris, who was having trouble with her car; they drove to an alley in the vicinity of 41st and Avalon; she took her coat off and he had intercourse with her; then some "creep" walked up behind the car and Miss Harris ran down the alley; the next morning he took the tire and her clothing out of his car and hid them.

Defendant testified in substance the same as Mrs. Williams had testified with respect to their meeting on San Pedro Street, getting the car started, and going to 41st Street. He testified further that, after he stopped the car, he said that after all the help he had given he expected something; he tried to kiss Mrs. Williams and she pushed him away; then he tried again to kiss her, and she shoved him away; then he drove to the next corner, she jumped out and started screaming; he drove about three blocks, stopped (and left) the car, and went home. On cross-examination, defendant testified that he intended to have intercourse with Mrs. Williams if she submitted, but when she screamed he drove to the next corner where she jumped out of the car; he did not threaten her with a knife; after she jumped out he became afraid and drove away.

Defendant also testified in substance the same as Miss Harris had testified with respect to their meeting on Wilmington Boulevard and going into an alley near 41st and McKinley. He testified further that he parked the car, he pulled her toward him and she pushed him back; she asked if he was going to take her home; he replied that he promised to take her home; she took her coat off and "laid" down; he had intercourse with her; she got out of the car, and some fellow ran by defendant, who was in the driver's seat; Miss Harris,

who was screaming, ran out of the alley; defendant drove out of the alley, became frightened, and went home. On cross-examination, he testified that he became frightened because he heard a lady say she was going to call the police; he took Miss Harris' coat out of his car and put it in his closet, and put her spare tire in his back yard; he took "the dollar" out of her wallet and put her wallet in his pocket; that he lied when he told the officers he had not picked up a woman in the vicinity of 114th Street and Wilmington, and when he told the officers that he did not have the spare tire or the wallet.

Appellant's argument with respect to insufficiency of the evidence pertains only to Count I. The evidence was sufficient to support both verdicts.

■ A further contention of appellant is that the court erred in receiving evidence as to prior misconduct of appellant. While Deputy District Attorney Aaron Stovitz was cross-examining defendant, the deputy said to defendant: "So you state on the witness stand here, that if she [referring to Mrs. Williams] was going to resist, you weren't going to have an act of sexual intercourse, is that right?" The defendant answered, "Yes." Then the following proceedings occurred: "Q. [By Deputy District Attorney Stovitz] You remember Miss Marian Hillary, Mr. Gill? Mr. Shaffer [attorney for defendant]: Just a moment, what was that name? Mr. Stovitz: Marian Hillary, H-i-l-l-a-r-y. Mr. Shaffer: Objected to as not being material. The Court: Objection is overruled. Q. By Mr. Stovitz: You remember Miss Marian Hillary? A. I remember the name. Q. You remember the date of May 10th, 1953? Mr. Shaffer: Objected to again, your Honor, as not within the issues of this case. The Court: Objection will be overruled. Q. By Mr. Stovitz: Remember the date of May 10, 1953? A. Yes, sir, I do. Q. Do you remember the location of 40th and South Central, an alley? A. 40th and South Central? No, sir, I don't, not 40th and South Central in an alley. Q. You remember the location of 40th and Central, an alley there? Mr. Shaffer: Your Honor, I object again. This time it's gone far beyond the scope of direct examination. It's not proper impeachment. Can't in any way be connected with the charges that are alleged here. The Court: Objection is overruled. Q. By Mr. Stovitz: Do you remember that? A. 40th and Central? Q. Yes. A. Yes, I remember it. Q. Now, you know what we're talking about? A. Yes, sir, I do. Q. Remember picking up Miss Hillary in

your car? A. Yes, sir, I do. Q. What were your intentions when you picked up Miss Hillary back on May 10th, 1953? A. I don't remember what my intentions were at that time. I had an intercourse with her. Q. You did have an act of sexual intercourse with her, didn't you? A. Yes, sir. Q. She resisted you, didn't she? A. No, sir, she didn't. Q. She submitted to you, is that right? A. Yes, sir." It was error to overrule defendant's objections and to receive the testimony pertaining to Miss Hillary. The testimony was unrelated to the charges upon which defendant was on trial. It was not proper cross-examination. It did not tend to prove a common plan or scheme on the part of defendant, which plan or scheme would tend to prove that defendant committed either of the offenses charged. Rules with reference to admissibility of evidence of similar offenses are stated in detail in *People* v. *Channell*, 136 Cal.App.2d 99 [288 P.2d 326], and in *People* v. *Cassandras*, 83 Cal.App.2d 272 [188 P.2d 546]. In *People* v. *Cassandras, supra,* it was said at page 281: "[W]here the prior rape or attempt is committed under circumstances remarkably similar to the one charged the evidence is admissible to show a plan or scheme to commit the crime in that fashion, even though the prior rape or attempt was committed on a person other than the prosecutrix. In such cases the evidence that defendant committed the prior offense tends to prove that he committed the offense charged." In the present case the testimony of defendant pertaining to Miss Hillary, elicited by the deputy district attorney over objections by defendant, did not prove a prior crime of rape—the testimony was that she did not resist, but submitted to the act of intercourse (there was no evidence as to her age). Miss Hillary was not called as a witness, and the deputy district attorney did not justify or attempt to justify the asking of those questions. It is apparent that his question, "She resisted you, didn't she?" was intended (irrespective of defendant's denial) to create the impression that she did resist. Defendant's counsel is correct in asserting that the deputy district attorney was guilty of misconduct in asking the questions regarding Miss Hillary. In view of the conflicting factual considerations herein, the errors in receiving said testimony, and the misconduct of the deputy district attorney, were prejudicial. It is to be noted that the jury deliberated about seven hours.

Another contention of appellant is that, under the circumstances here, the deputy district attorney was guilty of misconduct in calling defendant's wife as a witness. When

Officer Banks was a witness, the deputy district attorney said to him: "Now before we get to the 23rd of May conversation, without telling us what was said, sir, did you speak to the defendant's wife?" The officer answered, "Yes." Counsel for defendant said that he objected to that as being irrelevant and immaterial. The objection was overruled. "Q. By Mr. Stovitz: And when did you speak to the defendant's wife? A. On the morning of the 16th. Q. And was this in the presence of the defendant, or outside of his presence? A. It was in his presence. Q. And where did this conversation take place? A. At the defendant's residence, in the backyard." In rebuttal and as the last witness in the case, the deputy district attorney called the wife of defendant as a witness. After she had taken the oath and had stated her name, defendant's counsel objected to any testimony by defendant's wife. Then the judge said: "What is the purpose of this, Mr. Stovitz?" The deputy replied: "Well, if the defendant objects, your Honor, I cannot ask her any questions. Mr. Shaffer: If we can have an offer of proof at the bench, maybe I'll withdraw the objection. The Court: I don't think it's necessary. You may be excused. The objection will be sustained. A man's wife cannot be used as a witness against him. That's all. Step down. Mr. Stovitz: The People rest, your Honor." The mere fact that the prosecution calls the wife of a defendant as a witness is not improper. In the present case, however, the deputy district attorney knew that during the first part of the trial, defendant had objected to the deputy's question as to whether Officer Banks had spoken to defendant's wife. After the deputy had called the wife as a witness, and after the defendant had objected, the judge asked the deputy, "What is the purpose of this, Mr. Stovitz?" The deputy evaded the question of the judge and merely stated, "Well, if the defendant objects, your Honor, I cannot ask her any questions." It is obvious that the deputy knew, when he called defendant's wife as a witness, that she would not be permitted to testify; and it is obvious that he intended thereby to unfairly create an unfavorable impression against defendant. When this conduct of the deputy is considered in connection with his conduct in asking defendant the irrelevant questions about Miss Hillary, it seems apparent that the deputy intended that a substantial part of the trial should be by unfair innuendoes. In *People* v. *Grider*, 13 Cal.App. 703 [110 P. 586], it was said at page 712: "Where an improper question is asked

of a witness by a district attorney, the test whether it is misconduct is found in answer to the question: 'What was the purpose of counsel in asking the question?' If it was to take an unfair advantage of the defendant by intimating to the jury something that was either not true or not capable of being proven in the manner attempted then it is error.'' Under the circumstances in the present case, the deputy district attorney was guilty of prejudicial misconduct.

The judgment is reversed and the case is remanded for a new trial. The purported appeal from the sentence is dismissed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied July 24, 1956, and respondent's petition for a hearing by the Supreme Court was denied August 8, 1956. Shenk, J., was of the opinion that the petition should be granted.