[Crim. No. 314.   Fifth Dist.   Mar. 8, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. BARRY MILES SIGAL, Defendant and Appellant.

Allan B. O'Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

GARGANO, J.—For the third time Barry Miles Sigal was convicted, after jury trial, of murder in the second degree. He appeals from the judgment.

The facts are substantially as follows. The decedent Mrs. Wilma McAfee, a 67-year-old woman, was found dead by her daughter on January 12, 1962, around 7 p.m. She had been dead between fifteen to twenty-eight hours, placing the time of death between 9:30 p.m. on January 11, 1962, and 4 a.m. on January 12, 1962. At the time of her death the decedent was the manager of an apartment house in Sacramento containing 20 units, and the body was discovered in the apartment in which she resided. The apartment's doors and windows were locked, and apparently none of the entrances had been tampered with. In fact, the daughter had gained access to the apartment by a pass key which was customarily kept hidden in the basement or garage. The victim's body was found in the bedroom, partially covered by a bedspread, face up and fully clothed. The apartment gave no appearance of a struggle having occurred, and the victim's clothing was not torn. She was wearing a wrist watch, and an envelope containing $30 was found on the floor. A valuable diamond ring, together with some jewelry, was also found in the top dresser drawer. However, a master key which Mrs. McAfee kept on a long chain was missing; the chain was found near her body. The keys to her automobile were also missing, and the automobile had disappeared. There was a neckerchief or scarf around the victim's neck and the cause of death was diagnosed as asphyxiation due to strangulation. The victim had been struck forcefully twice in the head, and these blows had been inflicted prior to her death.

The evidence upon which the defendant was convicted was entirely circumstantial. In the late afternoon of January 11, 1962, the decedent and defendant were seen talking in a friendly manner in the doorway of defendant's apartment. Sometime on the same day between the hours of 3 p.m. and shortly before midnight a .45 caliber pistol, a clip and a box of .45 caliber ammunition were stolen from the apartment of another tenant, Mr. David Snyder. Entry to this apartment had not been forced; rather, admittance had apparently been gained by use of a key. Defendant had previously visited the

Snyder apartment when Mr. Snyder was there, and they had discussed guns in general and the .45 caliber pistol in particular. On January 12, 1962, the defendant's apartment was searched. A hall light in the apartment was on and there were dirty dishes in the sink. Approximately a pound of beef was on the drainboard, and there were other packages of meat in the refrigerator. The bed was unmade and there were clothes and shoes in the closet. The defendant was next seen in Jacksonville, Illinois by a service station attendant in an automobile later identified as the automobile which belonged to the decedent, Mrs. McAfee. At that time the defendant stated that he was delivering the car to a friend in Springfield, Illinois. While there he had a candy bar and took some No-Doz tablets. The McAfee automobile was found on January 20, 1962, parked in a supermarket parking lot in Springfield, Illinois, covered with snow. The last snow in this area had occurred four or five days earlier. When found, the vehicle was locked, and according to the opinion of an experienced police captain it had not been "hot wired,"—i.e., whoever drove it used a key. Defendant's fingerprints were found on the car's rear view mirror, and on a box of No-Doz discovered on the car seat. The defendant was arrested on February 18, 1962, in Seattle, Washington in a hotel where he was registered in his own name. A search of the hotel room revealed a .45 caliber pistol loaded with a clip of seven rounds, and a box of ammunition. The gun was identified as the one belonging to David Snyder.

Defendant's first contention for reversal is not directly concerned with his judgment of conviction, nor does it raise any question of error or other impropriety during his third trial. Instead, it attacks the court below for refusing to allow him to withdraw his plea of "not guilty" for the purpose of introducing a motion, pursuant to Penal Code section 995, to dismiss the indictment under which he was arraigned. It is apparently conceded by both parties that the following transpired. Defendant, after indictment by the grand jury of Sacramento County, was convicted of the murder of Mrs. Wilma McAfee. The judgment of conviction, however, was reversed by the Court of Appeal (3d District), which held that certain incriminating statements made by the defendant to a policeman in Seattle after his arrest were inadmissible. (*People* v. *Sigal*, 221 Cal.App.2d 684 [34 Cal.Rptr. 767]). Thereafter, the defendant moved the trial court to permit him to withdraw his plea of "not guilty" so that he could make a motion

under Penal Code section 995 to have the indictment set aside. Defendant's motion was denied and he was again tried and convicted after jury trial for the murder of Mrs. McAfee. This judgment of conviction was also reversed by the Court of Appeal (3d District) in *People* v. *Sigal*, 235 Cal.App.2d 449 [45 Cal.Rptr. 481]. On September 16, 1965, after reversal of his second conviction, appellant again made a motion for permission to withdraw his plea of "not guilty" for the purpose of making a motion pursuant to Penal Code section 995. This motion was denied on September 27, 1965.

Defendant asserts that the only evidence presented to the grand jury to connect him with the offense for which he was indicted was the evidence later declared inadmissible in *People* v. *Sigal*, 221 Cal.App.2d 684 [34 Cal.Rptr. 767]. He argues that according to *Greenberg* v. *Superior Court*, 19 Cal. 2d 319 [121 P.2d 713], the indictment was void and conferred no jurisdiction on the superior court to try him. ■ Thus, he contends that it was prejudicial error for the trial court to deny his request to withdraw his plea of "not guilty" in order to permit him to move to set aside the indictment under Penal Code section 995.

We do not agree with this contention. In *Greenberg* the defendant had made a timely motion in the trial court to set aside the indictment on the ground that the evidence was insufficient to connect him with the crime charged. The Supreme Court, in holding that an indictment based on no evidence is void and confers no jurisdiction on the superior court, relied in part on the statute (former Penal Code section 921, now Penal Code section 939.8) which provided: "The grand jury ought to find an indictment when all the evidence before them, taken together, if unexplained or uncontradicted, would, in their judgment, warrant a conviction by a trial jury."[1] However, the statute (Penal Code section 996) also provides that if the motion to set aside is not made the defendant is thereafter precluded from objecting. Hence, it is settled that the failure to seasonably raise the objection by motion to dismiss (prior to demurrer or plea) constitutes a waiver of any future objection (*People* v. *Ortiz*, 208 Cal.App. 2d 313 [25 Cal.Rptr. 431] ; *People* v. *Diaz*, 206 Cal.App.2d 651 [24 Cal.Rptr. 367]). In fact, in *People* v. *Elliot*, 54 Cal.2d

---

[1]Section 939.8 of the Penal Code now reads:

"The grand jury shall find an indictment when all the evidence before it, taken together, if unexplained or uncontradicted, would, in its judgment, warrant a conviction by a trial jury."

498, 503 [6 Cal.Rptr. 753, 354 P.2d 225], the court stated: "It is also settled that, if the defendant has not been legally committed and if the trial court erroneously denies the motion to set the commitment aside and permits the action to proceed to judgment, the resulting conviction must be reversed. [Citations.] The theory of these cases is that where the accused is not legally committed within the meaning of section 995 of the Penal Code, the commitment is voidable. *Upon proper objection*, the Superior Court has no jurisdiction to proceed. . . ." (Italics added) ■ From these cases it is clear that the trial court lacks jurisdiction to proceed on an indictment founded against a defendant on insufficient evidence only if the objection is timely; and if the defendant pleads "not guilty" as in the instant case, his right to object is waived even though he was not aware of the inadmissibility of the evidence presented against him before the grand jury when he entered his plea. Consequently, the question herein presented is not jurisdictional, but rather it is whether the court below abused its discretion in denying defendant's motion to withdraw his plea of "not guilty" so that he could make a motion to set aside the indictment under Penal Code section 995.

■ The obvious purpose of section 995 is to eliminate unnecessary trials and to prevent accusatory bodies such as grand juries from encroaching on the right of a person to be free from prosecution for crime unless there is some rational basis for entertaining the possibility of guilt (*Greenberg* v. *Superior Court, supra,* 19 Cal.2d 319). In the instant case, however, when the trial court ruled on defendant's motions, particularly after his second trial, it had before it the opinion of the appellate court in which the evidence presented against him had been carefully evaluated (*People* v. *Sigal, supra,* 235 Cal.App.2d 449). In this opinion the court stated that the evidence was sufficient to sustain a conviction for murder in the second degree. It follows, that in denying defendant's motion to withdraw his plea, the court correctly found that there was sufficient evidence to warrant a third trial and, presumably correctly, assumed that a successful motion under Penal Code section 995 would simply have resulted in another indictment and thus served no useful purpose. Under these circumstances it is manifest that the court did not abuse its discretion.

■ In any event the defendant cannot prevail on this point in this appeal. We have not been furnished with a tran-

script of the grand jury proceeding, nor was this transcript made a part of the record of the appeal. Consequently, we cannot determine from the record whether the evidence declared inadmissible in the defendant's first appeal (*People* v. *Sigal, supra,* 221 Cal.App.2d 684) was the only evidence presented to the grand jury in support of its indictment. Absent a showing to the contrary, we must presume in favor of the sufficiency of the grand jury's indictment.

Defendant's remaining contentions are substantially as follows:

1) The theft of a .45 caliber automatic and the .45 caliber automatic were improperly admitted into evidence.

2) The evidence was insufficient to sustain the conviction.

3) The district attorney was guilty of prejudicial misconduct. We will consider the defendant's contentions respectively.

■ 1) The precise question raised by defendant's contention pertaining to the .45 caliber automatic, magazine and ammunition (which were taken from the Snyder apartment) was presented to the appellate court in defendant's second appeal. (*People* v. *Sigal, supra,* 235 Cal.App.2d 449.) In that case the court, at page 453 of the opinion, stated: "Appellant contends that it was improper to receive evidence of the theft of the .45 automatic. ' "It is settled in this state . . . that except when it shows merely criminal disposition [citations], evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. 'The general tests of the admissibility of evidence in a criminal case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people . . .? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' " ' (*People* v. *Lopez,* 60 Cal.2d 223, 249 [32 Cal. Rptr. 424, 384 P.2d 16].)

"The evidence was relevant because it permitted an inference that Sigal entered the apartment with a master key before midnight the night of the murder. It also was relevant because it tended to pinpoint the time of Sigal's flight which is a factor which may be considered with the other evidence tending to connect an accused with the commission of the crime. (*People* v. *Moore,* 211 Cal.App.2d 585 [27 Cal.Rptr. 526].) Thus there was no error in its admission." We agree

with the reasoning of the appellate court in *Sigal, supra,* and since the facts herein presented are essentially the same as presented to the court in that case, we adopt its conclusion as our own. ■ We would add that defendant's assertion, that an inference cannot be based on an inference, has been repudiated in this state (*People* v. *Vignoli,* 213 Cal.App.2d 855 [29 Cal.Rptr. 260]). In this respect he argues that possession of a stolen gun does not tend to prove possession of a pass key, for you are required to draw inference upon inference to get from the gun to the identity of the killer. The present rule, both in criminal and civil cases, is that an inference cannot be based solely on an inference that is too remote or conjectural (*People* v. *Phillips,* 173 Cal.App.2d 349 [343 P.2d 270]). The inference which may be drawn from the possession of the stolen gun is neither remote nor too conjectural.

2) We also do not agree with defendant's contention that the evidence is insufficient to connect him with the crime, and thus insufficient to sustain his conviction of murder in the second degree. It is of course true that the evidence upon which the defendant was convicted was entirely circumstantial. ■ However, guilt of the crime of murder may be established by circumstantial evidence (*People* v. *Reed,* 38 Cal.2d 423 [240 P.2d 590]; *People* v. *Paisley,* 214 Cal.App.2d 225 [29 Cal.Rptr. 307]). ■ Furthermore, it is not the function of an appellate court to decide whether the evidence establishes guilt beyond a reasonable doubt. As stated in *People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911] (cert. den., 346 U.S. 827 [98 L.Ed. 352, 74 S.Ct. 47]), ''. . . The test on appeal is whether there is substantial evidence to support a conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt. . . .'' ■ In the instant case, contrary to defendant's emphatic assertion, the prosecution wove a strong web of circumstantial evidence. In fact, we find it difficult to visualize a more incriminating combination of circumstances. The victim's body was found in a locked apartment with no evidence of forceable entry. Moreover, the apartment was located in an apartment house with three entrances, and the doors to these entrances were customarily kept locked. From these facts it is reasonable to assume that the murderer was either a tenant or someone known to the victim who had free access to the apartment house. The defendant was a tenant in the victim's apartment house and was known to the victim. The victim was

strangled by someone standing behind her, and there was no evidence of a struggle. This fact also indicates that she was killed by a person she knew and trusted. Defendant was seen talking to the victim on the day of the murder in a friendly manner. After the body was found the victim's master key to the apartment house was discovered missing. This key was customarily kept in the victim's possession, clasped to a safety pin. The safety pin and key chain were found near the body, suggesting that whoever killed her had stolen the key. On the same evening the locked apartment of another tenant in the same apartment house was entered into by someone who apparently had a key to the apartment, and a .45 caliber automatic and ammunition clip and ammunition were stolen. The defendant had previously visited this apartment when the tenant was present, and had learned of the presence of the gun. After defendant was arrested in Seattle, Washington, the missing .45 caliber automatic, the ammunition clip and the ammunition were found in his possession. From this fact, it is reasonably certain that the defendant was the person who had stolen the victim's master key on the night of the murder. The victim's car keys were also missing, and her car had disappeared. By a strange coincidence, the defendant was also missing and a search of his apartment indicated flight. Thereafter, defendant was seen in the victim's car in the State of Illinois by a gas station attendant. When seen he was holding a box of No-Doz tablets. The victim's car was located in a parking lot in the State of Illinois. It showed no evidence of ''hot wiring,'' and defendant's fingerprints were found on the rear view mirror and on a box of No-Doz tablets located on the car seat. From these facts, it is also reasonably certain that the defendant was the person who had taken the victim's car keys on the night of the murder and stolen her car. Thus, from all of these facts and circumstances, it is clear that not only is there substantial evidence in the record to connect the defendant with the crime and to support the finding of the trier of fact in this respect, but when viewed as a whole the evidence would compel a reasonable man to conclude that the defendant is guilty of murder of the victim beyond a reasonable doubt and to a moral certainty.

3) Defendant's final contention is that the deputy district attorney who was in charge of the prosecution was guilty of flagrant and delberate misconduct when he called the witness Rubaiyat B. Castellow, a special agent of the Federal Bureau of Investigation, to testify, whom he allegedly knew could not

testify. As a matter of fact, he contends that the witness was called for the sole purpose of prejudicing the defendant in the eyes of the jury. The record shows that the following occurred when this witness was called:

" 'Q. State your full name, please. A. Rubaiyat B. Castellow. Q. And your occupation? A. I'm a special agent, Federal Bureau of Investigation. Q. Where are you stationed, sir? A. Seattle, Washington. Q. Were you employed in that capacity in Seattle, Washington, in February of 1962? A. I was. Q. Did you have occasion at that time to encounter the Defendant in this case? A. Yes, I did. Q. And do you recognize him here in court? A. Well, I've never seen him with a mask on before, but it looks like him. Q. And that's at the end of the counsel table? A. Right. Q. When did you see the Defendant in Seattle? A. On the morning of February 19, 1962, at the interview room of Seattle City Jail. Q. And did you have a conversation with the Defendant at that time? A. I did. Q. Lasting for approximately how long? A. Approximately two hours, a few minutes less. Q. Did you advise him of his constitutional rights at that time? A. Well, I advised him of certain of his rights that we normally advise them of. Q. Is that an F.B.I. procedure, to give advice of certain rights? A. It is. Q. And would you recite what rights the Defendant was advised of? A. I advised him he was not required to make any statement, that if he did make any statement, it could be used against him in a court of law. I advised him he had a right to consult an attorney prior to making any statement.

" 'MR. PUGLIA: Your Honor, I anticipate that there will be a legal problem. Perhaps the Court would like to—I would suggest the Court might like to take testimony—

" 'MR. WELLS: Yes, of course at this time I am going to object, because I feel I know what—

" 'THE COURT: Of course the Court hasn't heard it yet. Then I'll excuse the jury and listen to the matter. Ladies and gentlemen, there will be a brief recess for you. You can wait out in the corridor or the juryroom until you are called back in by the bailiff. It may be a little while. You are to keep in mind the admonition. If you will file out now.' " (R.T. 241:6 to 242:24.)

Out of the presence of the jury the district attorney attempted to show a waiver by the defendant. He offered to prove, through the testimony of Mr. Castellow, that the F.B.I. agent had advised defendant of his right to an attorney; that defendant stated that he was aware of his right and requested

the agent to contact an attorney; that the agent explained that he was unable to acquiesce in this respect, but that defendant could call one himself; that defendant informed the agent that he did not have the money to hire an attorney, and that he wanted a federal public defender; that the agent told him there was no federal public defender and explained how an indigent could obtain an attorney in that county; that after this and a discussion of the public defender system California, the defendant indicated that he would wait until he arrived in California to obtain an attorney; that defendant advised the agent that he did not desire to discuss the murder and did not talk about it; and that after that defendant continued to converse with the agent and made the statements which the district attorney wished to introduce into evidence.

After showing these facts, the district attorney stated his belief that this was new evidence and that it constituted a waiver under *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], which had been decided subsequent to the original trial and appeal (*People* v. *Sigal, supra,* 221 Cal. App.2d 684). The court rejected this argument and held that the statement fell within the *Dorado* rule, and sustained the objection to the witness' testimony. At that time a motion for mistrial was made by the defendant, but the motion was denied. The court concluded that what had already been testified to before the jury had no substantive meaning to the jury. And, after the jury was reconvened the following admonition was given: "Ladies and gentlemen, you've heard some testimony given by a witness, Mr. Castellow, who was on the witness stand when you were excused from the courtroom. All of the testimony that he related to you is ordered stricken from the record, and this means that it does not exist in the record, and you are to disregard it. You are to treat it as though you never heard it. You are admonished you are not to consider it for any purpose, and in weighing the matter that you will weigh at a later stage in these proceedings, you are not to consider it for any purpose, and you are to follow the Court's admonition it has been stricken and is not before you.

"Is that understood? You are all indicating you understand that admonition." (R.T. 262)

■■■ It is settled that a mere mistake relative to the admissibility of proffered evidence is not misconduct in the absence of a showing that the prosecutor was not acting in good faith (*People* v. *Raucho,* 8 Cal.App.2d 655 [47 P.2d

1108]; *People* v. *Hillery,* 62 Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d 382]; and *People* v. *Ornelas,* 17 Cal.App.2d 608 [62 P.2d 608]). ▮▮▮ The term "misconduct," when applied to an act of an attorney, implies a dishonest act or an attempt to persuade the court or jury by use of deceptive or reprehensible methods (*People* v. *Green,* 236 Cal.App.2d 1 [45 P.2d 744]; and *People* v. *Baker,* 207 Cal.App.2d 717 [24 Cal.Rptr. 691]). Consequently, we are reluctant to ascribe such conduct to an officer of the court unless the record clearly indicates that he acted in bad faith.

In support of his contention that the deputy district attorney was guilty of misconduct, defendant in essence argues that the law of the case was settled in the first *Sigal* appeal, and therefore the prosecutor knew that the testimony of Mr. Castellow was inadmissible. He further asserts that the same witness had been called to testify during his second trial, and the trial judge sustained a similar objection made by defense counsel. Hence, he concludes that the prosecutor was armed with knowledge which unequivocally indicates that he acted in bad faith, and that the only purpose for which the witness was called was to get before the jury the fact that defendant had made a statement to the federal agent and inferentially that this statement was incriminating.

We are not convinced that *People* v. *Sigal,* 221 Cal.App.2d 684 [34 Cal.Rptr. 767] settled the law of the case as to statements made by the defendant to federal agent Castellow. For the doctrine to apply, the point of law must have been actually presented and determined by the appellate court (*Pigeon Point Ranch, Inc.* v. *Perot,* 59 Cal.2d 227 [28 Cal. Rptr. 865, 379 P.2d 321]). In the first *Sigal* appeal, *supra,* which was decided prior to *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], the appellate court was disturbed by the coercive tactics of the California officials which were so effective in eventually getting the defendant to talk. In fact, the critical factor which motivated the court's opinion was defendant's incommunicado retention lasting approximately sixty hours, during which he repeatedly asked for but was denied counsel, and during which time he was persuaded, coaxed and inveigled into talking, notwithstanding his own awareness that he was "nailing his own coffin." Thus, the court concluded that his statements to the California officials were tantamount to a coerced confession. The court did not, however, necessarily hold that statements voluntarily and freely made by defendant to Mr. Castellow

after he had been advised of his rights were also inadmissible. Consequently, the record does not clearly demonstrate that the prosecutor was acting in bad faith when he called Mr. Castellow to the stand. To the contrary, it is arguable that the prosecutor was entitled to assert that under the then governing decisional law (*People* v. *Dorado*), the statements which were freely and voluntarily made by the defendant to Mr. Castellow prior to the prolonged detention period and after he was properly advised of his rights to counsel and his right to remain silent, could be used against him, even though they were made after he requested an attorney. In other words, it is arguable that the prosecutor was entitled to assert that the defendant had knowingly waived his right to counsel when he continued to converse with Mr. Castellow after Mr. Castellow had carefully explained his rights, and that his statements were admissible in evidence if clearly shown that they were not induced by undue persuasion or tactics tantamount to coercion.

Defendant cites the cases of *People* v. *Solis*, 193 Cal.App.2d 68 [13 Cal.Rptr. 813] and *People* v. *Gill*, 143 Cal.App.2d 46 [299 P.2d 682], in support of his position of misconduct. These cases, however, are distinguishable. In each case the prosecutor called the defendant's wife to testify, with full knowledge that she could not be compelled to do so without the defendant's consent. Moreover, both cases were distinguished in the recent decision of *People* v. *Ney*, 238 Cal.App. 2d 785 [48 Cal.Rptr. 265], where the court observed that the cases hold, in essence, that the mere calling of the spouse is not improper, but such act, joined with other conduct or considered with other events in the record, may constitute prejudicial misconduct.

We do not, however, entirely condone the prosecutor's conduct in the instant case. We simply hold that we do not find actual misconduct under the facts of the case. The prosecutor knew, or should have known, that an objection to the witness' testimony was not only likely but probable. He further knew, or should have known, that there was a good possibility that the objection would be sustained. Thus, the foundational questions should have been asked outside of the presence of the jury, thereby insuring defendant a fair trial and eliminating the charge of misconduct which was ultimately made. It is self-evident that misconduct on the part of the prosecutor not only threatens the conviction of the innocent by denial of a fair trial, but it also serves to prevent

justice by jeopardizing a conviction in a case where the defendant is clearly guilty.

In any event, we do not believe that it is reasonably probable that a more favorable verdict to the defendant would have resulted had the foundational questions asked by Mr. Castellow been asked out of the presence of the jury. As we have already stated, the evidence against the defendant, although entirely circumstantial, was nevertheless compelling. Moreover, as the trial judge observed, Mr. Castellow's testimony had not progressed to the point that it was so meaningful to the jury that it could not be cured by an appropriate admonition. The court properly admonished the jury, and we presume that they were true to their oath and followed this admonition (*People* v. *Seiterle*, 59 Cal.2d 703 [31 Cal.Rptr. 67, 381 P.2d 947] (cert. den., 375 U.S. 887 [11 L.Ed.2d 116, 84 S.Ct. 163])).

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied March 31, 1967, and appellant's petition for a hearing by the Supreme Court was denied May 4, 1967.