[Crim. No. 3702. Fourth Dist., Div. One. Feb. 23, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
TEODORO MORALES OLEA, Defendant and Appellant.

510

## Counsel

Sheldon Berlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark L. Christiansen, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**AULT, J.**—Teodoro Morales Olea was charged with first degree murder (Pen. Code, § 187), tried by jury, and found guilty of voluntary manslaughter (Pen. Code, § 192, subd. 1), a lesser included offense. After the court denied his motion for a new trial, refused to reduce the degree of the offense, and sentenced him to state prison, he appealed, claiming: (1) Insufficiency of the evidence to support the verdict; (2) Error in instructing the jury on diminished capacity and lesser included offenses; (3) Error in giving an instruction on flight, pursuant to Penal Code section 1127c; (4) Error in permitting the prosecution to show the jury colored slides of the victim's bloody body; (5) If no single one of the above, considered alone, constitutes reversible error, their cumulative effect caused a miscarriage of justice which requires reversal.

### Facts

In the City of Fullerton, on May 3, 1967, at about 5 a.m., Mrs. Olea, appellant's wife, reported to Mr. Mendez, a neighbor, she had found a dead body in her husband's automobile parked inside their yard. Checking, Mendez identified the body as that of Miguel Sandoval Garcia, whom he had known for two years. Police were called. Garcia's body was lying on the front seat of the car, covered with blood, with the feet sticking out of the open right door. The autopsy revealed Garcia had died from a massive loss of blood, his throat having been cut from ear to ear. The pathologist found marks indicating Garcia had been slashed with a sharp instrument from 15 to 20 times. Fragments of metal were found in the wounds, but the weapon itself was never found. Garcia's hands were also cut, principally his left hand, as if he had been trying to ward off the attack. The alcohol content of his blood was .29 percent, indicating he was highly intoxicated and probably lethargic when attacked

Olea and Garcia had been friends and had spent the preceding afternoon

and evening together, drinking beer and becoming very drunk A barmaid, Maria Velasquez, first saw them between 1 and 2 p.m. in El Sombrero bar; about 5 or 6 they appeared at El Progresso bar, where she was employed; they arrived in Olea's car, which he parked directly in front of the open door of the bar. Maria had seen them both in the bar many times before, Garcia more often than Olea. On this occasion she observed them drinking many pitchers of beer together. She heard Garcia insulting Olea, but she didn't pay much attention because Garcia habitually became loud and excitable when drinking, and people usually ignored him. She heard Garcia tell Olea he was not good for anything or anyone, using a few bad words. Olea's reply was simply: "Go away," "Leave me alone." Garcia would go to another table for a while, then return to heckle Olea again. This was repeated about five times. Later in the evening Olea and Garcia were friendly again and ate "poorboys" together, Garcia paying for them. Ordinarily Olea did not drink very much, but this time he became more drunk than Maria had ever seen him before. When Maria left the bar about midnight, Olea was still at the bar drinking, and Garcia had fallen asleep at the end of the bar. The owner of the bar woke Garcia and told him to leave. Shortly after 1 a.m. Garcia left the bar, alone. Five minutes later, as the bar was closing, Olea and two other customers, unidentified, left.

What occurred after this is not precisely known. Four hours later Garcia's body was found in Olea's car, parked inside Olea's yard behind a locked gate. The engine was cold, and the car windows were covered with moisture. Mrs. Olea produced a key so the police could unlock the gate. The only blood found was inside the car. Fingerprints of Olea, Garcia and unidentified persons were on the car. Olea was nowhere to be found.

A warrant was issued for Olea's arrest, and for over a year the police tried to locate him. They learned Olea had a workman's compensation case pending and informed his attorney they intended to arrest his client. Olea did not appear for a scheduled hearing. Finally, in May of 1968, after the attorney had been served with a subpoena to appear before the grand jury in connection with Olea's whereabouts, Olea voluntarily turned himself in to the police, accompanied by the attorney.

Olea made no statement to the police and did not testify at the trial. The defense presented only one witness, a Mr. Munjia, who testified Olea and Garcia were good friends; he also related that on "far apart" occasions he had found Garcia asleep in his car in the morning after Garcia had been drinking. He did not know if Garcia ever slept in other persons' cars. Police booking slips were introduced which showed Garcia had lived in Olea's house before Olea. The address given by Garcia during the years 1961-1966 was 401 S. Pomona Street, which was where Garcia's body was discovered in Olea's car.

## I. Sufficiency of the Evidence

■ When the issue of insufficiency of the evidence to support the verdict is raised on appeal from a criminal conviction, an appellate court must view the evidence in the light most favorable to the People and must presume in support of the verdict the existence of every fact which the jury could reasonably deduce from the evidence. (*People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) ■ If the circumstances reasonably justify the guilty verdict, reversal is not warranted merely because the circumstances can also be reconciled with a contrary finding. (*Ibid.*) It is the jury, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. (*People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].)

■ The test on appeal is whether there is substantial evidence to support the verdict, and before the jury's verdict can be set aside, ". . . it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People* v. *Redmond, supra,* 71 Cal.2d 745, 755.)

While appellant's attorney gives lip-service to these well established rules in his brief, he ignores them in his argument. He cites the recent case of *People* v. *Blakeslee,* 2 Cal.App.3d 831 [82 Cal.Rptr. 839], where the appellate court reversed a second degree murder conviction for insufficiency of the evidence, and tries to fit this case within the framework of the facts there involved. In so doing, he stresses some aspects of the two cases which have similarity and ignores the other substantial differences between them. Giving his imagination free reign, he speculates the murder could have been committed by an itinerant field worker from one of the nearby Bracero camps, by someone who bore a grudge against Garcia, or wanted his work papers or his money. Since it requires no great strength to use a sharp weapon, he suggests the murder might have been committed by Garcia's estranged wife, or by appellant's own wife or his teen-age son, who refused to testify at the trial. Using the language of *Blakeslee,* he concludes that if the evidence can be thus manipulated, it will not support the conviction.

■ We disagree with the contention the evidence was insufficient to connect Olea with the killing and to substantiate his conviction of voluntary manslaughter. ■ While the evidence against him was entirely circumstantial, such evidence is as sufficient to convict as direct evidence and may be relied upon to establish guilt, even in the crime of murder. (*People* v. *Reed,* 38 Cal.2d 423, 431 [240 P.2d 590]; *People* v. *Sigal,* 249 Cal.App.2d 299, 307 [57 Cal.Rptr. 541]; *People* v. *Paisley,* 214 Cal.App.2d 225, 231 [29 Cal.Rptr. 307].)

■　Here, the circumstantial evidence connecting Olea with Garcia's slaying was not merely substantial, it was overwhelming. He and Garcia were shown to have spent the entire afternoon and most of the night together preceding the early morning homicide. They were drinking beer and became drunk. They had quarreled several times, and Garcia was heard cursing and insulting Olea on several occasions. They arrived together at El Progresso bar in Olea's car, and they left the bar about 1 a.m., Garcia leaving approximately five minutes before Olea. Four hours later, Garcia's body was found in Olea's car which was parked in Olea's yard behind a locked gate. His papers, wallet and money were found upon his person. By a strange coincidence Olea, who had previously been seen daily about his home, disappeared and remained a fugitive for over a year. He finally surrendered to the police after the attorney who represented him in a civil matter had been threatened with grand jury proceedings. Motive, opportunity and a consciousness of guilt were all demonstrated by the evidence, and all remained wholly unexplained by any evidence offered by appellant. The facts proved, together with the reasonable inferences to be drawn from them, unerringly connect Olea with Garcia's homicide and substantially support his conviction of voluntary manslaughter.

## II. Instruction on Diminished Capacity and Necessarily Included Offenses

■　At the prosecution's request, and over appellant's objection, the trial court instructed the jury on diminished capacity and voluntary and involuntary manslaughter. Appellant contends it was error to give the instructions, first, because they were not warranted by the evidence, and second, because they were objected to by the defense, which wanted only instructions on first degree murder or no guilt. Neither contention is valid.

The instructions were relevant to the issues raised by evidence of appellant's intoxication and Garcia's persistent, provocative, insulting behavior toward him.  ■　It is the trial court's duty, even when not requested, to instruct the jury on all principles of law relevant to the issues raised by the evidence. (*People* v. *Graham,* 71 Cal.2d 303, 317-319 [78 Cal.Rptr. 217, 455 P.2d 153].)  ■　Appellant asserts the rule is otherwise where the defense specifically objects to the proffered instructions as a matter of trial strategy. His attorney indicates it was his strategy in the case to "go for broke," to require the jury to choose between verdicts of guilty of first degree murder or acquittal. In his brief he argues: "It is the import of *People* v. *Graham,* 71 A.C. 30 [*sic*] [71 Cal.2d 303, 318] that where defense counsel expresses a deliberate tactical purpose in resisting an instruction, even though ordinarily favorable to the defense, the trial

court has an obligation not to give that instruction, i.e., not to interfere in the manner in which defense counsel wishes to present his case." This is not the import of the case at all; appellant has twisted the court's reasoning 180 degrees.

In *Graham,* the court was discussing "invited error," and stated a defendant cannot complain on appeal of error in instructions, which resulted from his insistence at trial that a particular instruction be given or omitted for strategic reasons. The case does not hold it is error for the court to decline a defendant's invitation to commit error by properly instructing the jury on all principles of law relevant to the issues raised by the evidence.

Appellant's argument finds a complete answer in the statement appearing in *People* v. *St. Martin,* 1 Cal.3d 524 at page 533 [83 Cal.Rptr. 166, 463 P.2d 390]: "The requirement of instructions on lesser included offenses is based on the elementary principle that the court should instruct the jury on every material question. [Citation.] The state has no interest in a defendant obtaining an acquittal where he is innocent of the primary offense charged but guilty of a necessarily included offense. Nor has the state any legitimate interest in obtaining a conviction of the offense charged where the jury entertains a reasonable doubt of guilt of the charged offense but returns a verdict of guilty of that offense solely because the jury is unwilling to acquit where it is satisfied that the defendant has been guilty of wrongful conduct constituting a necessarily included offense. *Likewise, a defendant has no legitimate interest in compelling the jury to adopt an all or nothing approach to the issue of guilt. Our courts are not gambling halls but forums for the discovery of truth.*" (Italics added.) While the quotation is directed to instructions concerning necessarily included offenses, the logic is equally applicable to instructions on diminished capacity. Since the instructions given were relevant to the evidence, they were proper. The fact appellant did not request the instructions and specifically objected to them for strategic reasons is immaterial.

### III. OTHER CONTENTIONS

It was also proper for the trial court to give CALJIC instruction No. 36 Revised [now CALJIC No. 2.52] on flight which is expressed in the terms of Penal Code section 1127c. The contention it was error to give the instruction because there was no direct proof Olea knew he had been charged with the murder during the year he was a fugitive is without merit. The very purpose of enacting Penal Code section 1127c was to abolish the rule stated in early California cases that the jury could not be instructed to consider flight as evidence of guilt unless it had been proved the defendant knew he had been accused of the commission of a particular crime. (*People*

v. *Hill,* 67 Cal.2d 105, 120-121 [60 Cal.Rptr. 234, 429 P.2d 586].) It was for the jury to determine whether appellant's conduct amounted to flight and the significance and weight to be attached to such circumstance. (*People* v. *Santo,* 43 Cal.2d 319, 330 [273 P.2d 249]; *People* v. *Jack,* 233 Cal.App. 2d 446, 458 [43 Cal.Rptr. 566].)

The trial court did not abuse its discretion in admitting photos showing the decedent's wounds and the position of his body in the automobile. Such photographs are admissible if their probative value outweighs any inflammatory effect, and the determination of probative value is ordinarily within the sound discretion of the trial court. (*People* v. *Robles,* 2 Cal.3d 205, 214 [85 Cal.Rptr. 166, 466 P.2d 710].) The trial judge held a preliminary screening of the photographs out of the presence of the jury and described them for the record. The pictures showed the nature and quality of the wounds and were relevant to the issues of intent, malice and the degree of the offense. They were used in connection with the pathologist's testimony and to identify the victim of the crime. They were used in a discreet manner and not exhibited to the jury every time a witness referred to one of them.

Since we have found no error in those areas where appellant assigned specific error, his final contention of cumulative error requiring reversal falls of its own weight.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 13, 1971.