[Crim. No. 14366.    Second Dist., Div. One.    June 28, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. MANUEL ESTRELLA ROMERO, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert T. Jacobs, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of comviction of burglary.

In an information filed in Los Angeles on March 3, 1967, defendant was charged with codefendant George Figueroa with burglarizing the residence of George Gramata in the City of Bell on February 7, 1967. It was further charged that Figueroa previously had been convicted of two felonies and had served a term in prison on each of them and that Romero previously had been convicted of a violation of section 11501 of the Health and Safety Code, in October 1960 and had served a term in prison therefor. Romero pleaded not guilty and severance from his codefendant was granted. The charged prior conviction with reference to Romero was admitted. In a jury trial defendant was found guilty of burglary in the second degree. Defendant was sentenced to the state prison, the term to run concurrently with any other term which defendant was to serve. A timely notice of appeal from the judgment was filed.

A résumé of some of the facts is as follows: George Gramata resided at his home in Bell on February 7, 1967. When he left his house in the morning the place was in order. At about 1:15 p.m. Gramata was returning to his home and noticed as he approached, a car parked in front with two men standing near the back of the car. Gramata also saw that the back gate to his premises was open and that the two men in front were starting to open the trunk to the car. When Gramata reached his house, one man was standing by the car and the trunk of the car was open. The front door of Gramata's house was open. Gramata asked the man at the parked car what was taking place and the man said, ''Nothing much, I guess.'' The man then closed the trunk to the car and got into the car. Gramata entered the front door of his house and saw a man leaving a bedroom with a pillow case. Gramata grabbed at the pillow case and struggled momentarily with the man who dropped the pillow case and ran out the front door. Inside the pillow case was Mrs. Gramata's jewelry which had been kept in a drawer in the bedroom. Gramata was knocked down by his assailant and upon the man's leaving, he got up and, hearing a voice on the back porch area of his house, looked out and saw defendant Romero, who was then about seven feet away, leaving through the back door. Gramata also looked out of the kitchen window and saw Romero move by swiftly. The victim then ran out of his front door and saw Romero and another man running down the

street. When defendant was about fifty feet away, he turned to look and Gramata got another view of him. Gramata saw the men run toward another street. He returned to his tow truck, called the police on a radio and within a minute or so the police were there. Gramata's house was in a state of disarray. The television set was pulled away from where it was usually located and covered with a blanket, several appliances were on a chair and the back door had been broken open. The victim gave to the police a description of the men he had seen in and about his house, including that of defendant.

On that date a police sergeant of Maywood, Victor Logrecco, was off-duty and conversing with a Bell officer when a radio broadcast was heard with reference to the burglary. Logrecco got into his own car and proceeded to the area of the crime and heard the victim describe the suspects and particularly the defendant as "tall, wearing a white T-shirt, black trousers, and a black shirt" and that he appeared to be of Mexican descent. About six blocks away from the victim's house, Logrecco parked his car and started walking through the area on the look for one of the suspects. He walked up the driveway, came to a wall separating two parcels of property, looked over the wall and saw defendant in a crouched position, on his hands and knees, with his face toward the ground. The defendant was wet, possibly from perspiration, and Logrecco asked defendant to approach him and showed defendant his police identification. Defendant was asked his name and he refused to answer. The officer was of the opinion that defendant answered the description of one of the burglars and placed him under arrest. Defendant, still breathing heavily, was escorted to the street area where a Bell police vehicle arrived and took him to the police department building. Prior to the arrest, there were no marked police cars in the immediate vicinity of the place of arrest. Defendant had no identification upon his person.

About a half-hour after the episode at his house, Gramata was called to the police station, taken to a room and told by a policeman, " 'I'm going to show you some men here. Make sure that you're picking out the right one, because you have got to be sure.' " Gramata saw a policeman and defendant in another room and identified defendant as one of the men involved in the burglary. He also identified another of the burglars.

The defendant testified that he was on parole at the time and occasion in question, that he was in the area of the place

of his arrest attempting to locate his brother whose address was unknown to him. Further in effect defendant stated that he was then a parole violator and upon seeing the police cars became nervous, went into a yard behind a house and pretended to be picking weeds when he was arrested and that he was not one of the burglars.

Appellant now asserts that the "lineup" was unfair, that he did not receive proper legal representation at the trial and that he was convicted by the use of "false evidence." ▇ It is up to the appellant to establish that the confrontation resulted in such unfairness and that under the circumstances it infringed upon his right to due process of law. (*Stovall* v. *Denno*, 388 U.S. 293, 299 [18 L.Ed.2d 1199, 1204-1205, 87 S.Ct. 1967]; *People* v. *Caruso*, 68 Cal.2d 183, 184 [65 Cal. Rptr. 336, 436 P.2d 336].) ▇ The appellant here was with a police officer at the police station when the victim was asked in effect whether he could identify appellant as one of the burglars. The victim was warned to make certain of any identification. Many courts have complained that the police have suggested to a victim as to who the suspect was and as to his guilt; the reverse situation exists here. Here Gramata came home, saw some unusual and strange activity at the house, entered and saw what was obviously a burglary taking place. He saw appellant in his house, saw him leave in a hurry and run down the street. Within a half-hour he saw appellant in the police station and positively identified him as one of the burglars. No principle of justice rooted in our traditions and conscience as a people is offended by the course which was followed in this case. It would be ridiculous to contend that under the circumstances the police should have gone out and brought in a number of persons, placed appellant with them and then said in effect to the victim "Which one participated in the burglary?" We are not persuaded that we should declare a confrontation objectionable solely because the suspect was viewed with a policeman by the victim. To do so would cancel a police investigative tool which if effectively used aids in quickly exonerating the innocent and discovering the guilty. *People* v. *Caruso, supra,* 68 Cal.2d 183, is not applicable to the facts at hand. In *Caruso* the victim viewed the profile of the suspect only for a matter of seconds, the suspect's clothing could not be described and Caruso had a "persuasive alibi" and three corroborating witnesses. In the case at hand Gramata had four separate looks at appellant, described his clothing accurately and within a half-hour saw

him in the police station. The description of appellant by the victim was accurate enough that the officer picked him up within minutes after the crime.

Furthermore this court determines that if any error was committed in permitting the identification evidence to be admitted that beyond a reasonable doubt such claimed error was harmless.

██ With reference to the claim that the trial counsel representation was ineffective, appellant presents no supporting facts. The trial was not reduced to a farce or a sham although appellant's defense appears close to being a farce when one reads the original record in this case (as this court has done pursuant to the Rules of Court), and the background and statements of appellant are considered.

There is not a word in the record in this case to indicate in anywise that appellant was convicted upon "false evidence."

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 21, 1968.