264 Cal.App.2d 747 (1968)
70 Cal. Rptr. 892
THE PEOPLE, Plaintiff and Respondent,
v.
MICHAEL FRANK IRVIN et al., Defendants and Appellants.
Docket No. 6691.
Court of Appeals of California, First District, Division One.
August 7, 1968.
*751 Rippen, Hom & Cropper, Rippen & Hom and Eugene Rippen for Defendants and Appellants.
Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.
SIMS, J.
Following a trial by jury, defendants Irvin and Portoian were each found guilty of burglary of the first degree in violation of section 459 of the Penal Code, and the latter was further found guilty of possession of marijuana in violation of section 11530 of the Health and Safety Code. Portoian, who had admitted prior convictions for burglary of the second degree and for possession of marijuana, was sentenced to concurrent terms in the state prison. Irvin was admitted to probation upon the condition, among others, that he serve four months in the county jail. Execution of Portoian's sentence and of the order admitting Irvin to probation *752 was suspended so that each could perfect an appeal and arrange for release on bail pending determination of the appeal. The defendants filed a joint notice of appeal within the time provided for in the stay of execution and presumably posted bail.
The defendants jointly contend that they were illegally arrested by the police and that the fruits of the arrest were erroneously admitted in evidence against them; that evidence of the victim's identification of the defendants was erroneously admitted, or in any event admitted without a finding by the court that the procedure was fair and reasonable, and that the legally admissible evidence is insufficient to sustain the convictions. Portoian additionally contends that section 11530 of the Health and Safety Code is unconstitutional, that there is no evidence to show that he had knowledge of the narcotic character of marijuana, and that he was prejudiced by the admission of evidence of an extrajudicial statement of his codefendant. Irvin contends he was prejudiced because his codefendant stipulated in open court that he, Portoian, knew marijuana when he saw it. No merit is found in defendants' contentions.

The Facts
At 2:30 a.m. on December 22, 1966, Mrs. Sarah Le Fievre was awakened by the presence of someone in her bedroom. She shook her husband, who was sleeping next to her, and said, "Jack, there is someone in our house." A dark figure ran out of the room.
Mr. Le Fievre awakened, and saw something moving fast. He jumped out of bed, ran to the front door of the apartment, and stopped some three feet outside. He observed two men running on the driveway. The man closest to him was approximately five feet ten, weighed about 160 pounds, and was wearing a corduroy coat. The other man was taller and slimmer. After dressing quickly, Mr. Le Fievre unsuccessfully attempted to pursue the two men. Mrs. Le Fievre called the Pacifica police.
While in the apartment, the burglars took Mr. Le Fievre's wristwatch and Mrs. Le Fievre's black patent leather handbag. The handbag contained a pink wallet, with some $8, a checkbook, a savings account passbook, some gasoline credit cards, a Bank-Americard, a social security credit card and a library card.
Officer Towne, of the Pacifica police, was on patrol in a marked vehicle when he received a radio report that a burglary *753 had occurred at the Le Fievre apartment. He proceeded to the address given, 1383 Adobe Street, in Pacifica. While en route he received a second radio broadcast that the burglary had been committed by "two white male adults, five-ten, one possibly a little taller. One of them was ... described to be wearing a brown jacket, car length, carsize coat, brown corduroy jacket with collar of some sort." He approached the area via Linda Mar Boulevard, turned on Adobe, passed the scene of the burglary, and cruised in the vicinity of Rosita, and the five-block area surrounding 1383 Adobe. The officer did not see any individuals on the street, or any vehicles in motion, other than police vehicles. He then returned to the scene of the burglary, got out of his car, and was starting to go to the apartment, when a vehicle, with its headlights on "came westbound on Rosita, and turned northbound on Adobe" passing the officer. Towne, in observing the automobile saw that it contained two white male adults, one of whom he thought was wearing a brown jacket. The officer followed the car, and stopped it four-tenths of a mile later on Linda Mar Boulevard. The evidence concerning the events which ensued is referred to below.
At approximately 4 a.m. the same morning Mr. Le Fievre went to the Pacifica police station to view the defendants. The evidence relating to his identification testimony is discussed in connection with defendants' present attack on the procedure followed.
On his way home from the police station, Le Fievre found his wife's pink wallet and a gasoline credit card in the westbound lane at Linda Mar, about two-tenths of a mile from his house.
Defendant Irvin testified that he and Portoian were in the area because Portoian had heard about a party. Defendant Portoian did not testify.

Admissibility of the Evidence Seized at Arrest
[1a] Officer Towne, who stopped the vehicle in which the defendants were riding, testified that defendant Portoian, who was driving, got out of the vehicle and walked back along the left side of the car toward him. Portoian was so close to the side of the car, that the left side of his jacket, which was open and obscuring his hand, brushed against the vehicle. About two steps past the left rear wheel of the vehicle, Portoian "stopped, turned around and looked under the ... vehicle." He then bent down, picked up a black patent leather purse, and brought it to Towne saying something like "Look *754 what I found." Although the purse was lying in the path of the rear wheel, it did not appear to be damaged, or to have been run over by a tire. Towne examined the purse, and found a checkbook with personalized checks, bearing the Le Fievre's name. The defendants were placed under arrest, and removed from the scene by other officers, who had responded to Towne's call. As Towne walked past the left rear wheel of the defendants' car, which had been left at the scene for impounding, he noticed a brown paper bag. The bag was very round, and it also did not appear to have been run over or damaged. The bag contained marijuana.
The black patent leather purse had been admitted into evidence without objection when it was identified by Mrs. Le Fievre as having been taken from her home on the morning of the burglary. No objection was interposed to the officer's narration concerning the discovery of the purse and the subsequent search of its contents. A brown corduroy jacket had previously been marked for identification in connection with Mr. Le Fievre's testimony relating his observations. The officer testified without objection that it appeared to be the one he observed on Portoian when he stopped him. An objection to the admission in evidence of the jacket on the grounds that it was not sufficiently identified as the one taken from Portoian by the officers was then sustained, but subsequently overruled, and the jacket was ultimately received in evidence. The brown paper bag was received in evidence over defendants' objection that there was no evidence to show that defendants, or either of them, ever had possession of the bag and its contents, or if they did that such possession was with knowledge of the character of its contents.
[2] "No question of illegal arrest, search or seizure was raised in the trial court. It is settled law that such objection cannot be raised for the first time on appeal. [Citations.]" (People v. Demery (1960) 187 Cal. App.2d 613, 614 [10 Cal. Rptr. 135]. Accord: People v. Saldana (1965) 233 Cal. App.2d 24, 33 [43 Cal. Rptr. 312]; and People v. Rivera (1962) 202 Cal. App.2d 839, 842 [21 Cal. Rptr. 182].) [3] Furthermore, the evidence fails to disclose any search. "A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way; the mere looking at that which is open to view is not a search. (People v. Spicer, 163 Cal. App.2d 678, 683 [329 P.2d 917].)" (People v. Hurst (1960) 183 Cal. App.2d 379, 386 [6 Cal. Rptr. 483]. See People v. Lamberson (1965) 235 Cal. App.2d 856, 859 [45 Cal. Rptr. 563]; People v. Walker *755 (1962) 203 Cal. App.2d 552, 556 [21 Cal. Rptr. 692]; People v. Fitch (1961) 189 Cal. App.2d 398, 403 [11 Cal. Rptr. 273]; Harris v. United States (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; Wilson v. Porter (9th Cir.1966) 361 F.2d 412, 416; and cf. People v. Baca (1967) 254 Cal. App.2d 428, 430-431 [62 Cal. Rptr. 182].)
[4] Defendants concede that under suspicious circumstances officers have the right to stop a vehicle for investigation. (People v. Mickelson (1963) 59 Cal.2d 448, 450-451 [30 Cal. Rptr. 18, 380 P.2d 658]; People v. Wigginton, (1967) 254 Cal. App.2d 321, 324 [62 Cal. Rptr. 104]; People v. Kraps (1965) 238 Cal. App.2d 675, 678 [48 Cal. Rptr. 89]; People v. Lamberson, supra, 235 Cal. App.2d 856, 858; Wilson v. Porter, supra, 361 F.2d 412, 415.) Their contention that there was no suspicious or unusual circumstance justifying such a stop (see People v. Wigginton; supra; People v. Kraps, supra; and Wilson v. Porter, supra) borders on the frivolous. The early morning hours, the dearth of traffic in the residential neighborhood, the nature of the coat worn by the driver,[1] and the presence of two men in the car were all circumstances which called for further investigation in connection with the recent burglary. (See People v. Gardner (1967) 252 Cal. App.2d 320, 325-326 [60 Cal. Rptr. 321].)
[1b] The officer was warranted in inferring that the purse had been dropped by Portoian. (See People v. Lamberson, supra; People v. Fitch, supra; and People v. Spicer (1958) 163 Cal. App.2d 678, 683 [329 P.2d 917].) When its contents revealed that it belonged to one of the victims of the burglary, the arrest of the defendants and the taking and retention of custody of the items subsequently introduced in evidence were proper. (See People v. Michael (1955) 45 Cal.2d 751, 753 [290 P.2d 852]; People v. Walker, supra, 203 Cal. App.2d 552, 556.) The evidence was properly received and there was no occasion to advise the jury to disregard evidence illegally seized.

Identification Testimony
Mr. Le Fievre testified that the closer of the two men whom he observed in the driveway was about 35 or 40 feet away, and that the other was turning the corner of the driveway 90 or 95 feet away. The lighting was very good, and he made the *756 observations related above, but he did not get a look at the face of either of the two persons and could not identify either of them by facial description. Despite thorough cross-examination the witness adhered to the belief that the closer man was not colored. Le Fievre conceded that he had never seen the men until he went down to the police station and the police officers introduced him to the two defendants. He did testify that the defendants whom he viewed at the police station, who were present in court, were the same or similar in height, weight and general build to the two men he had seen in the driveway.
Mr. Le Fievre testified that he had gone to the police station at the request of the police at about 3:30 or 4 a.m. He observed a man, who was later identified to him as Portoian, seated behind the counter with a police officer. Defendant Irvin subsequently came out of a back room. He did not recognize Portoian when Portoian was seated or when he stood up; nor did he recognize Irvin when he came in. The police had each defendant put on his coat. Le Fievre still did not then, nor did he ever, recognize Irvin, although he originally observed the size and shape of the far man as tall and slim and consistent with that of Irvin as he appeared in court. When Portoian came out from behind the counter with his coat on and turned around so that his entire body was visible, the victim thought he was the man he had seen running in the driveway. He recognized and identified him from the size and shape of his general form and figure, including his hair and shoulders, and the type of coat he was wearing.
The confrontation involved only the two defendants. There was no lineup, and no other persons were exhibited to the victim.
Defendants by reference to selected passages from United States v. Wade (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926],[2] seek to establish that the court erred in failing *757 to conduct a special hearing out of the presence of the jury to determine the fairness and reasonableness of the victim's identification at the police station, and to determine whether the courtroom identification was independent of that earlier confrontation and itself fair and reasonable. They assert that the identification at the police station was unfair and unreasonable as a matter of law, and that the court erred in not instructing the jury to determine the fairness and reasonableness of the courtroom identification.
In Wade the majority concluded: "Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the postindictment lineup was a critical stage of the prosecution at which he was `as much entitled to such aid [of counsel] ... as at the trial itself.' (Powell v. Alabama, 287 U.S. 45, at p. 57 [77 L.Ed. 158, 164, 53 S.Ct. 55, 84 A.L.R. 527]." (388 U.S. at pp. 236-237 [18 L.Ed.2d at pp. 1162-1163]. See also Gilbert v. California (1967) 388 U.S. 263, 272-273 [18 L.Ed.2d 1178, 1186-1187, 87 S.Ct. 1951]; People v. Caruso (1968) 68 Cal.2d 183, 184 [65 Cal. Rptr. 336, 436 P.2d 336]; People v. Harris (1967) 67 Cal.2d 866, 871-872 [64 Cal. Rptr. 313, 434 P.2d 609]; People v. Feggans (1967) 67 Cal.2d 444, 448-449 [62 Cal. Rptr. 419, 432 P.2d 21]; Wise v. United States (D.C. Cir.1967) 383 F.2d 206, 209; and Crume v. Beto (5th Cir.1967) 383 F.2d 36, 38.) [5] In Stovall v. Denno (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], the court ruled, "We *758 hold that Wade and Gilbert affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date [June 12, 1967]." (388 U.S. at p. 296 [18 L.Ed.2d at p. 1203], and see pp. 296-300 [18 L.Ed.2d pp. 1203-1205]. See also Wise v. United States, supra; and Crume v. Beto, supra.) The same rule of retroactivity is applied in this state. (People v. Feggans, supra, 67 Cal.2d 444, 448-449. See also People v. Caruso, supra; and People v. Harris, supra.) Defendants' exhibition to the victim was almost six months prior to the decision in Wade, so they may not assert the denial of counsel at their police station confrontation.
[6] Defendants must rely upon general due process considerations which were phrased in Stovall v. Denno, supra, as follows: "We turn now to the question whether petitioner, although not entitled to the application of Wade and Gilbert to his case, is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of attack upon a conviction independent of any right to counsel claim. Palmer v. Peyton, 359 F.2d 199.... The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. [7] However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, ..." (388 U.S. at pp. 301-302 [18 L.Ed.2d at p. 1206]; fn. omitted. See also People v. Caruso, supra, 68 Cal.2d at pp. 187-190; People v. Harris, supra, 67 Cal.2d at p. 872; People v. Feggans, supra, 67 Cal.2d at pp. 448-449; People v. Romero (1968) 263 Cal. App.2d 590, 593 [69 Cal. Rptr. 748]; People v. Blackburn (1968) 260 Cal. App.2d 35, 44 [66 Cal. Rptr. 845]; People v. Slutts (1968) 259 Cal. App.2d 886, 892 [66 Cal. Rptr. 862]; People v. Smith (1968) 259 Cal. App.2d 814, 819 [66 Cal. Rptr. 551]; People v. Douglas (1968) 259 Cal. App.2d 694, 697 [66 Cal. Rptr. 492]; Wise v. United States, supra, 383 F.2d at p. 209; Crume v. Beto, supra, 383 F.2d at p. 38; State v. Batchelor (Mo. 1967) 418 S.W.2d 929, 933-934; People v. Ballott (1967) 20 N.Y.2d 600, 606 [286 N.Y.S.2d 1, 5, 233 N.E.2d 103]; Commonwealth v. Choice (1967) Dissent 211 Pa.Super. 176 [235 A.2d 173, 174-175]; and State v. Matlack (1967) 49 N.J. 491, 498 [231 A.2d 369, 373].)
*759 [8] Their failure to object to the testimony regarding the police station confrontation at a trial which antedated Stovall v. Denno does not preclude considering the question at this time. (People v. Doherty (1967) 67 Cal.2d 9, 14-15 [59 Cal. Rptr. 857, 429 P.2d 177]; People v. Kitchens (1956) 46 Cal.2d 260, 262-263 [294 P.2d 17]; People v. Blackburn, supra, 260 Cal. App.2d 35, 44; People v. Douglas, supra, 259 Cal. App.2d 694, 696-697.) Nevertheless, "before defendant may invoke an exclusionary concept he must demonstrate that the lineup `resulted in such unfairness that it infringed his right to due process of law.' (Stovall v. Denno (1967) 388 U.S. 293, 299 [18 L.Ed.2d 1199, 1205].)" (People v. Caruso, supra, 68 Cal.2d at p. 184.)
In Stovall the court noted that the practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. (388 U.S. at p. 302 [18 L.Ed.2d at p. 1206]; fn. omitted. See also United States v. Wade, supra, 388 U.S. at p. 233, fn. 21 [18 L.Ed.2d at p. 1161], and accompanying text; People v. Slutts, supra, 259 Cal. App.2d at pp. 892-893; People v. Douglas, supra, 259 Cal. App.2d at p. 697; People v. Pedercine (1967) 256 Cal. App.2d 328, 336 [63 Cal. Rptr. 873]; Wise v. United States, supra, 383 F.2d at p. 209; Crume v. Beto, supra, 383 F.2d at p. 39; Palmer v. Peyton (4th Cir.1966) 359 F.2d 199, 202; People v. Ballott, supra, 20 N.Y.2d at p. 606 [286 N.Y.S.2d at p. 5, 233 N.E.2d 103].)
Nevertheless, in Stovall the court in considering the "totality of the circumstances surrounding" the confrontation (388 U.S. at p. 302 [18 L.Ed.2d at p. 1206]), upheld a single confrontation because the critical condition of the victim-witness made an immediate hospital confrontation imperative. This case presents another situation where a single confrontation may be warranted. [9] Prompt identification of a suspect who has been apprehended close to the time and place of the offense "aids in quickly exonerating the innocent and discovering the guilty." (People v. Romero, supra, 263 Cal. App.2d at p. 593. See also People v. Shaw (1965) 237 Cal. App.2d 606, 621-622 [47 Cal. Rptr. 96].) Furthermore, the promptitude may promote reliability. In Wise v. United States, supra, the court ruled, "Here was a confrontation proximate to the scene and time of the offense as well as the apprehension, where the observers and actors were limited to those that were in fact present at the scene and time of the offense and the chase. Here were circumstances of fresh identification, *760 elements that if anything promote fairness, by assuring reliability, and are not inherently a denial of fairness. Putting aside the issue of right to counsel for reasons already noted, we do not consider a prompt identification of a suspect close to the time and place of an offense to diverge from the rudiments of fair play that govern the due balance of pertinent interests that suspects be treated fairly while the state pursues its responsibility of apprehending criminals." (383 F.2d at pp. 209-210. See also People v. Matlack, supra, 49 N.J. at p. 498 [231 A.2d at p. 373].) If innocent men had been apprehended should they await the assembling of a lineup, and the summoning of counsel, while the real perpetrators put more time, and presumably distance, between themselves and the focal point of the offense?
[10] In any event, it is clear that in this case there was no unfairness in the identification procedure. It may be assumed, and the record reveals, that despite ignorance of the due process objection enunciated in Stovall, defendants, through their separate counsel, were bringing out all aspects of the confrontation in the police station as it bore on the weight of the evidence. (See People v. Blackburn, supra, 260 Cal. App.2d at p. 44.) The totality of the circumstances should be viewed in the light of the identification which actually resulted. The record here reveals that the victim-witness in both his police station and courtroom identification was candid as to what he originally observed, and what characteristics of the defendants were similar to those observations. He at no time attempted to unqualifiedly identify either defendant as one of the persons who was in his driveway. Under these circumstances this particular identification did not "diverge from rudimentary fairness." (Wise v. United States, supra, 383 F.2d at p. 210; and see People v. Romero, supra, 263 Cal. App.2d at p. 593.)
Since there was nothing unfair about the police station identification, it is unnecessary to determine the extent, if any, that the courtroom identification was dependent upon the prior confrontation. The qualified nature of the courtroom identification mitigates against any inference that it was the product of priming from the earlier experience.
[11] In the absence of an objection and a request therefor, there was no occasion for the court to conduct a special hearing out of the presence of the jury to determine the fairness and reasonableness of the victim's identification at the police station. The facts were fully elicited. (See People v. Blackburn, *761 supra, 260 Cal. App.2d at p. 44; but cf. People v. Douglas, supra, 259 Cal. App.2d at p. 697 where facts in conflict.) Nor is there any warrant for leaving to the jury the question of the competency, as distinguished from the question of the weight, of the evidence.
No error is found in connection with the admission of the identification testimony.

Sufficiency of the Evidence
[12] Defendants contend that the circumstantial evidence against them is insufficient because it is not inconsistent with any other rational hypothesis. (See People v. Hall (1964) 62 Cal.2d 104, 112 [41 Cal. Rptr. 284, 396 P.2d 700]; and People v. Sisson (1939) 31 Cal. App.2d 92, 97 [87 P.2d 420].) They attack the identification evidence, point to the fact that a five dollar bill and a watch which were taken from the victims' house were never found, quarrel with the location of the purse and marijuana in relation to the automobile, and suggest, not only that the inference that Portoian dropped the purse and marijuana is improper, but also that the marijuana came from the purse and was the property of the victims.
The evidence, however, warrants the implied finding of the jury that these men, who resembled the figures seen by Mr. Le Fievre, who were in a residential area at a late hour at night, and who were in possession of stolen property, were in fact the burglars. (See People v. Beasley (1967) 250 Cal. App.2d 71, 80 [58 Cal. Rptr. 485]; People v. De Leon (1965) 236 Cal. App.2d 530, 533 [46 Cal. Rptr. 241].) [13] As to Portoian, it is well established that circumstantial evidence may be used to prove the elements of a charge of possession of marijuana. (People v. Groom (1964) 60 Cal.2d 694, 696-697 [36 Cal. Rptr. 327, 388 P.2d 359].) [14] The case is governed by the following principles: "`... The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof.... [15] We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the *762 jury. [Citations.]" (People v. Newland (1940) 15 Cal.2d 678, 681 [104 P.2d 778]. See also People v. Roberts (1964) 228 Cal. App.2d 722, 729 [39 Cal. Rptr. 843].)

Constitutionality of Section 11530 of the Health and Safety Code
[16] Defendant Portoian's objection that prohibition of possession of marijuana is unconstitutional because there has been no determination that its use is harmful was reviewed and rejected by this court, with other constitutional objections, in People v. Aguiar (1968) 257 Cal. App.2d 597 [65 Cal. Rptr. 171]. There is no merit to this contention.

Knowledge of Character of Marijuana
[17] The defendant Portoian was charged with and admitted a prior conviction for possession of marijuana. At the conclusion of the People's case, commendably out of the presence of the jury, the prosecutor advised the court and the defendants that he proposed to call Portoian's probation officer as a witness to prove the defendant's prior conviction and knowledge and connection with marijuana in the past. After prolonged discussion the court and prosecution accepted the following stipulation which was presented to the jury: "On behalf of Defendant Portoian we stipulate that the defendant Portoian knows marijuana when he sees it."
The stipulation must be viewed in the following context: "Although the allegations with respect to this prior conviction had been admitted by the defendant and, under the provisions of sections 1025 and 1093 of the Penal Code, reading or alluding to them was prohibited, evidence with respect thereto was admissible if relevant to any issue in the case. [Citation.] An essential ingredient of the offense with which the defendant was charged was his knowledge of the marijuana character of the article allegedly possessed by him. [Citation.] His plea of not guilty created an issue with respect to this matter. Evidence of the defendant's involvement in other similar crimes and other acts of a similar nature was admissible on the issue thus raised [citations], and was proof that he had knowledge that the substance in the containers found in the back yard at 269 South Allen Street was marijuana." (People v. Leyva (1960) 187 Cal. App.2d 249, 254 [9 Cal. Rptr. 469]. See also People v. Solis (1961) 193 Cal. App.2d 68, 75 [13 Cal. Rptr. 813]; and People v. Gonzales (1960) 186 Cal. App.2d 79, 83 [8 Cal. Rptr. 704].) Where, however, the defendant has admitted knowledge of the nature *763 of the substance it is error to refer to the prior conviction. In People v. Spencer (1956) 140 Cal. App.2d 97 [294 P.2d 997], the court ruled, "Here the record was clear, before the question of appellant's prior conviction of the misdemeanor conviction of possession of heroin was first asked by the prosecutor, from appellant's own testimony above quoted that appellant knew what heroin was. His defense, already developed, was not that he did not know what heroin was but that he was not guilty of the possession and sale of the particular heroin as charged in the information. Since it was already clear that knowledge of the narcotic character of heroin was not an issue there was no reason, and no justification, for the admission of this evidence with the attendant danger of its misuse by the jury despite the cautionary instruction of the court." (140 Cal. App.2d at p. 105. See also People v. Solis, supra, 193 Cal. App.2d at pp. 75-77.)
A person who knows marijuana when he sees it, unquestionably knows its character. (See People v. Groom, supra, 60 Cal.2d 694, 697; People v. Villaneuva (1963) 220 Cal. App.2d 443, 450 [33 Cal. Rptr. 811]; and People v. Spencer, supra, 140 Cal. App.2d 97, 105.) Even if it could be assumed in this day and age that knowledge that a substance was marijuana was not attended by knowledge of its character as a statutory illegal narcotic, Portoian cannot now deny that the stipulation was intended to cover his knowledge of that character. His attorney's stipulation is binding on him. (People v. Leyva, supra, 187 Cal. App.2d 249, 254. See also People v. Bonman (1962) 201 Cal. App.2d 248, 253 [20 Cal. Rptr. 238]; and People v. White (1960) 180 Cal. App.2d 99, 103 [4 Cal. Rptr. 261].) The intent of the attorney to withdraw the issue of knowledge of the substance from controversy in order to avoid reference to the prior conviction is manifested by the fact that he read to the court that portion of People v. Solis, supra, which referred to the rule in People v. Spencer, supra (see 193 Cal. App.2d at p. 76).
In view of the foregoing it is unnecessary to determine whether the inference that Portoian sought to rid himself of the packet, which in fact contained marijuana, would suffice to show that he knew the nature of the substance in the packet. (See People v. Groom, supra, 60 Cal.2d 694, 697; People v. Roberts, supra, 228 Cal. App.2d 722, 726; and People v. Villaneuva, supra, 220 Cal. App.2d 443, 450.)

*764 Effect of Codefendant's Statement

[18] In cross-examining defendant Irvin, the deputy district attorney referred to a written statement the police had obtained from him on the night he was arrested. Irvin's attorney stipulated that it could be introduced in evidence. The court admitted the statement and advised the jury, "... this statement is binding and applicable only to the defendant Irvin and not to the other defendant."
The statement, which was echoed by Irvin's testimony, relates that he and Portoian went to the house of the latter's girl friend, and that after Portoian conversed with the girl, who said she was tired and wanted no company that night, they drove off and were subsequently stopped by the police.
Portoian seeks to apply the principles enunciated in People v. Aranda (1965) 63 Cal.2d 518 [47 Cal. Rptr. 353, 407 P.2d 265], and contends that the court, as directed by Aranda, should have either deleted all reference to Portoian or granted a severance of the trials. (See 63 Cal.2d at pp. 530-531.) Aranda applies to "an extrajudicial statement of one defendant that implicates a codefendant." (Id.; italics added.) Portoian was implicated by his presence at the scene. There was no need to protect him from improper consideration by the jury, over the court's admonition limiting its use, of Irvin's statement which contained matter which would exculpate Portoian, as well as Irvin, and which was not inconsistent or impeaching of any theory of innocence advanced by Portoian, who did not take the stand.
[19] The failure to object or move for separate trials bars consideration of the issue at this stage of the proceedings. (See People v. Smith (1967) 253 Cal. App.2d 299, 306-307 [61 Cal. Rptr. 457]; and People v. Stadnick (1962) 207 Cal. App.2d 767, 774 [25 Cal. Rptr. 30, 99 A.L.R.2d 766].) Nor has any showing been made as to how the statement prejudiced Portoian. (See People v. Dahlke (1967) 257 Cal. App.2d 82, 90 [64 Cal. Rptr. 599].) No error has been demonstrated.

Effect of Codefendant's Stipulation
[20] At the time of Portoian's stipulation that he knew marijuana when he saw it, the court admonished the jury as follows: "That stipulation then becomes evidence in this case and is a fact for the jury to consider, together with all of the other evidence introduced here. However, it should be noted at this time that this stipulation binds only the defendant Portoian. It does not in any way apply to or bind the defendant *765 Irvin. There is no stipulation entered into as far as he is concerned." The admonition was given in response to the earlier objection and the request of Irvin's counsel, made when proof of Portoian's prior conviction was first offered. Nevertheless, it is now contended on his behalf that the establishment of this fact against Portoian prejudiced Irvin and violated the spirit and purpose of the Aranda decision. (See People v. Aranda, supra, 63 Cal.2d 518 at pp. 528-529.)
Aranda is concerned with the extrajudicial statements of one defendant, which implicate a codefendant. It is not concerned with the incidental prejudice, if any, which may result to one defendant because it is revealed that his codefendant has a prior criminal record or has been involved in other criminal conduct. The court's admonition sufficed to cover this possibility. (See People v. Isby (1947) 30 Cal.2d 879, 897 [186 P.2d 405]; and People v. Skipper (1961) 190 Cal. App.2d 206, 211-212 [11 Cal. Rptr. 681].) Since the possession of marijuana charge was dismissed as to Irvin, he cannot claim that any inference was drawn against him in regard to that offense. (See People v. Saldana, supra, 233 Cal. App.2d 24, 29-31.)
[21] A joint trial of defendants involved in the same offense is proper in the absence of a motion for severance. (Pen. Code, § 1098; People v. Isby, supra, 30 Cal.2d 879, 897; People v. Alarcon (1962) 200 Cal. App.2d 860, 861 [19 Cal. Rptr. 667]; and see People v. Terrell (1955) 138 Cal. App.2d 35, 55-56 [291 P.2d 155].) Moreover, in the absence of any request for severance, there is no ruling to be reviewed at this time. (People v. Smith, supra, [dd]253 Cal. App.2d 299, 306-307; People v. Stadnick, supra, 207 Cal. App.2d 767, 774.) No error is found in the trial of Irvin.
The judgment against Portoian and order admitting Irvin to probation are affirmed.
Molinari, P.J., and Elkington, J., concurred.
Appellants' petition for a hearing by the Supreme Court was denied October 3, 1968.
NOTES
[1] Defendants contend that it was impossible that the officer could have observed the nature or color of the jacket when he first observed the vehicle, and that, in any event, as a clothing merchant testified, a brown corduroy jacket was then a very common article of apparel.
[2] "But the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial. The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." (388 U.S. at p. 228 [18 L.Ed.2d at p. 1158]; fn. omitted.) "A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. A commentator has observed that `[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor  perhaps it is responsible for more such errors than all other factors combined.'" (Id., pp. 228-229 [18 L.Ed.2d at p. 1158].) "Moreover, `[i]t is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial.'" (Id.; fn. omitted.) "The impediments to an objective observation are increased when the victim is the witness. Lineups are prevalent in rape and robbery prosecutions and present a particular hazard that a victim's understandable outrage may excite vengeful or spiteful motives." (Id., at p. 230 [18 L.Ed.2d at p. 1159]; fn. omitted.) "In short, the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification." (Id., pp. 231-232 [18 L.Ed.2d p. 1160].) "Similarly state reports, in the course of describing prior identifications admitted as evidence of guilt, reveal numerous instances of suggestive procedures, for example, that all in the lineup but the suspect were known to the identifying witness, ..." (Id., at pp. 232-233 [18 L.Ed.2d at p. 1160].)