[Crim. No. 226. Fifth Dist. Apr. 1, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES WILLIAMS, Defendant and Appellant.

**COUNSEL**

Donald J. Magarian, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, James T. McNally and Anthony M. Skrocki, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COAKLEY, J.**—A jury found Robert E. Lee and James Williams guilty of robbery (Pen. Code, § 211). Williams admitted a prior conviction, and he appeals from the judgment in which he was sentenced to prison. Two issues were raised on appeal: (1) that the identification of the appellant as one of the robbers was constitutionally improper; and (2) that the extrajudicial statement of his codefendant Lee was improperly admitted.

Mrs. DeHerrera and her husband were driving home from the El Trocadero Cafe in Fresno's Chinatown, where they had stopped for coffee. It was about 1 a.m., and Mrs. DeHerrera was driving. As they drove west on Tulare Street, their car was forced to a stop by a car which Mrs. DeHerrera had observed following them. Appellant Williams got out of the other car and walked to the DeHerrera vehicle. As he did so, Mrs. DeHerrera backed the car up and sought to escape. However, the other car overtook her and again forced her to stop. This time Lee and Williams approached the DeHerreras, and Williams pulled Mr. DeHerrera from the car. Lee entered the car on the passenger's side, struggled with Mrs. DeHerrera, and said he wanted to have intercourse with her. She resisted, grabbed the crotch of his pants, and heard them rip. Mr. DeHerrera's screams caused a nearby resident to turn on the lights of his home, which in turn caused Lee and Williams to run back to their car and drive away. Before doing so, however, Lee took Mrs. DeHerrera's billfold, which was lying on the floor of the car. It contained four $20 bills and miscellaneous papers.

The facts concerning the identification of the appellant are: Mrs. DeHerrera observed that her husband had blood on his lip, that his shirt was torn, and that he appeared to be cut in the back. She thereupon drove him home, and then returned to Chinatown to notify the police. As she passed the intersection of Church and West Streets, she saw the car which earlier had forced her off the road. Three men were beside the car. Mrs. DeHerrera continued to Chinatown, called the police, met the officers at the El Trocadero Cafe, described the two robbers and their dress to the officers, and returned to Church and West Streets with them. At Church and West Streets, Mrs. DeHerrera and the officers found the car which Mrs. DeHerrera had described as belonging to the robbers. The car was registered to the appellant. A few feet from the car, the police found a

pay slip bearing the name of Mrs. DeHerrera's son. This document had been in Mrs. DeHerrera's billfold.

Shortly after 1 a.m., while on patrol duty and before meeting Mrs. DeHerrera at the El Trocadero Cafe, Officer Jones saw the car which Mrs. DeHerrera later identified. Three men were by the car, and they asked Officer Jones for a push in order to get it started. He later identified two of the men as Lee and one George James. He did not get a good look at the third man. Upon returning to the stalled car with Mrs. DeHerrera, and recalling having seen three men at the car a few minutes earlier, Officer Jones put out a radio broadcast for them. He specifically named James who was well known to him. Shortly after 2 a.m., Officer West heard Officer Jones' broadcast regarding the three suspects. Since he had seen three men walking eastbound on Church Street a few minutes before the broadcast, and had recognized one of them as James, Officer West returned to the area where he had observed the men walking. He spotted them in front of Loretta's Bar, where they were entering a car occupied by two other men. Officer West arrested the three, searched them, and found a kitchen knife and three $20 bills on James.

At about this time, Officer Biggers drove to Church and West Streets, spoke with Mrs. DeHerrera, told her that some men were under arrest, and said that they wished her to identify them but to do so only if they were the ones who had forced her to stop. The officers and Mrs. DeHerrera proceeded to Loretta's Bar where the three suspects and the other two men, all Negroes, were lined up about 20 feet or more from Mrs. DeHerrera. She testified that she observed the men for five to ten minutes and that the three suspects appeared to be handcuffed.[1] She identified Lee as the man who struggled with her, and the appellant as the man who pulled her husband from the car. She did not identify James. The pants Lee was wearing when arrested were torn below the zipper. Mrs. DeHerrera testified that she was able to identify Lee and the appellant because the intersection where they stopped her car was lighted. She also made an in-court identification of Lee and the appellant, and described their dress at the time of the robbery.

■ We first consider appellant's attack upon the validity of the line-up, which he contends violated the rights guaranteed him by the Fifth and Fourteenth Amendments.

■ The burden is upon the appellant to establish that the confrontation resulted in unfairness and that it infringed upon his right of due process

---

[1]Officer Biggers testified that the three suspects were handcuffed behind their backs and that the handcuffs were not visible from the front of the men.

of law (*People* v. *Romero,* 263 Cal.App.2d 590, 593 [69 Cal.Rptr. 748]). In *People* v. *Burns,* 270 Cal.App.2d 238, 246 [75 Cal.Rptr. 688], the court held that: "The applicable principle, moreover, is one which favors prompt identification of a suspect. As the court stated in *Wise* v. *United States,* 383 F.2d 206, 210 [127 App.D.C. 276] [cert. den. (1968) 390 U.S. 964 . . .] '[W]e do not consider a prompt identification of a suspect close to the time and place of an offense to diverge from the rudiments of fair play that govern the due balance of pertinent interests that suspects be treated fairly while the state pursues its responsibility of apprehending criminals.' This principle finds expression in *People* v. *Irvin, supra,* 264 Cal.App.2d 747, 759 [70 Cal.Rptr. 892], as follows: 'Prompt identification of a suspect who has been apprehended close to the time and place of the offense "aids in quickly exonerating the innocent and discovering the guilty." (Citation.)' " That court went on to say that even ". . . 'a single person show up' does not of itself vitiate its fairness or trustworthiness. Such a procedure, although potentially unfair, does not constitute a denial of due process of law if the circumstances of the case demonstrate that the identification was correct and no way untrustworthy. [Citations.]"

As the court held in *People* v. *Floyd,* 1 Cal.3d 694, 714 [83 Cal.Rptr. 608, 464 P.2d 64], it is in the interest of suspects, as well as the police, to be confronted with witnesses as promptly as possible.

In *Stovall* v. *Denno,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967], the court held that: ". . . a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it. . . ."

■ While there is some confusion in the record as to the number of persons in the lineup, i.e., whether there were three or five men in the lineup, whether the handcuffs were visible on the three suspects, and whether the officers suggested the identification of the three suspects, nevertheless, viewed in its totality, the confrontation was both fair and convincing.

Appellant's argument that the lineup procedure violated his right to avoid self-incrimination is without merit. (See *United States* v. *Wade,* 388 U.S. 218, 221 [18 L.Ed.2d 1149, 1153, 87 S.Ct. 1926].)

■ We next consider appellant's contention that the admission in evidence, over his objection, of the extrajudicial statement of appellant's codefendant, Lee, constituted prejudicial error. The statement largely confirmed Mrs. DeHerrera's testimony as to the stopping of her car, the appellant pulling her husband from the car, and the taking of Mrs. DeHerrera's wallet from which some $20 bills were removed. The state-

ment tended to exculpate Lee, who said he was asleep in the back of Williams' car until the DeHerrera car was stopped and he heard a woman scream. It was not a confession. The court admonished the jury that Lee's statement was admissible only as against him, and not as against the appellant.

Admission of Lee's statement appears to have violated both *People v. Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], and *Bruton v. United States,* 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620], with respect to appellant. Both cases are applicable to this appeal, since *Aranda* governs cases pending on appeal at the time it was decided (*People v. Charles,* 66 Cal.2d 330 [57 Cal.Rptr. 745, 425 P.2d 545]), and *Bruton* is retroactive without limitation (*Roberts v. Russell,* 392 U.S. 293 [20 L.Ed.2d 1100, 88 S.Ct. 1921]). But neither *Aranda* nor *Bruton* holds that the error is prejudicial per se, requiring a reversal in all cases (see *People v. Camarillo,* 266 Cal.App.2d 523, 534 [72 Cal.Rptr. 296]).

" 'The improper admission into evidence of a codefendant's extrajudicial statement does not automatically require a reversal of the defendant's conviction.' " (*People v. Floyd, supra,* 1 Cal.3d 694, 721.)

It is our belief that (1) because of the independent and positive testimony of Mrs. DeHerrera identifying the appellant as one of the robbers, doing so at the minute of the robbery, and again at the trial, and (2) because of other evidence which conclusively establishes appellant's guilt, the error, if any, in admitting the extrajudicial statement of appellant's codefendant, Lee, was harmless beyond a reasonable doubt, and, therefore, a reversal of the judgment is not required. (See *Chapman v. California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824].)

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.